In re **TEMPLE–INLAND, INC., Temple–Inland Forest Products Corporation, Inland Paperboard and Packaging, Inc., and Wayne Pullen.**

No. 09–99–535 CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 28, 1999.

Decided Jan. 27, 2000.

supported by the evidence.

Gilbert I. Low, D. Allan Jones, John W. Newton, III, Robert J. Hambright, Leanne Johnson, Donean Surratt, Orgain, Bell & Tucker, Beaumont, for relator.

Gilbert T. Adams, Jr., Gilbert T. Adams, III, Law Offices of Gilbert T. Adams, Beaumont, for real party in interest.

Before WALKER, C.J., BURGESS and HILL,* JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

Relators, Temple–Inland, Inc., Temple–Inland Forest Products Corporation, Inland Paperboard and Packaging, Inc., and Wayne Pullen, petition this Court for a writ of mandamus to compel the trial court to set aside his order requiring relators to produce certain written documents, including a list of names of individuals who are barred from entering upon property owned or under the control of relators. The underlying lawsuit alleges several causes of action including tortious interference with employment relationship as well as a somewhat novel claim under the provisions of TEX. LAB. CODE ANN. § 52.031 (Vernon 1996).[1]  It is not disputed that

---

* The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1998).

1. Section 52.031, entitled, "Blacklisting Offense; Penalty," provides:

(a) In this section, "blacklist" means to place on a book or list or publish the name of an employee of an individual, firm, company, or corporation who was discharged or who voluntarily left that employment,

relators compiled and do have possession of said written documents, marked for identification purposes as D1–D30. At the trial court level, pursuant to TEX. R. CIV. P. 192.6, relators filed a motion for protective order in response to the plaintiffs' motion for production of the documents. Eventually, relators produced D1 through D30 in a sealed envelope for an *in camera* inspection by the trial court. The trial court ordered pages D1 through and including D18 to be produced without any restrictions on their use by plaintiffs. The trial court further ordered that because of attorney-client privilege pages D19 through and including D29 were not to be produced to the plaintiffs. Lastly, the trial court ordered page D30 produced to the plaintiffs with one paragraph redacted based upon attorney-client privilege. Relators are now before this Court essentially requesting the same relief as they did in the trial court.

■ We first address the propriety of mandamus relief. Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by ordinary appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). When the undisputed facts and the applicable law permit but one lawful decision, this Court is called on to ensure that decision is reached. *Id.* at 840. We will exercise our mandamus jurisdiction in a case, such as we conclude this to be, in which an ordinary appeal could not cure the error presented. *Id.* at 843.

■ To effectuate the truth-finding function of the legal system, discovery is not limited to what may be admissible at trial, but includes any non-privileged information relevant to the pending subject matter that is reasonably calculated to lead to the discovery of admissible evidence. TEX.R. CIV. P. 192.3. The broad scope of discovery may be circumscribed, however, by the legitimate interest of the opposing party in avoiding discovery based on a compelling, particularized interest in non-disclosure. *See Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984). Such limitations can be found in TEX.R. CIV. P. 192.4 ("Limitations on Scope of Discovery"), 192.5 ("Work Product"), 192.6 ("Protective Orders"), and under TEX.R. CIV. P. 193.3, which deals with claims of privileges. Article V of the Texas Rules of Evidence sets out the recognized list of privileges normally available to litigants. TEX.R. EVID. 501–510.

■ We have examined pages D1 through D30 as they have been provided to us under seal. We are not concerned with pages D19 through and including D29 because production of those pages was denied by the trial court, as was the one paragraph of D30. We have examined the remainder of the documents ordered by the trial court to be produced. We agree that they are discoverable. They do not contain any information for which a privilege is recognized. They also do not contain any trade secrets. The information on pages D1 through and including D18, as well as the non-redacted portion of D30,

intending to prevent the employee from engaging in or securing employment of any kind with any other person, in either a public or a private capacity.

(b) A person commits an offense if the person:

(1) blacklists or causes to be blacklisted an employee; or

(2) conspires or contrives by correspondence or any other manner to prevent an employee discharged by a corporation, company, or individual from procuring employment.

(c) An offense under this section is punishable by:

(1) a fine of not less than $50 or more than $250;

(2) imprisonment in jail for not less than 30 days or more than 90 days; or

(3) both the fine and imprisonment.

(d) This section may not be held to prohibit a corporation, company, or individual from giving, on application from a discharged employee or a person desiring to employ the employee, a written truthful statement of the reason for the discharge. The written statement may not be used as the cause for a civil or criminal action for libel against the person who furnishes the statement.

does not involve property or proprietary interests of relator, nor does it violate relators' privacy interests. Additionally, the fact that the documents were produced and are encompassed in thirty letter-sized pages obviates the need to discuss the claim that plaintiffs' request for production was "overly broad and unduly burdensome." Finally, because there is no proof that the documents were prepared or developed in anticipation of litigation or trial, they do not contain "work product" as that term is defined in Tex.R. Civ. P. 192.5. There is likewise no evidence to support a claim of attorney-client privilege with regard to pages D1 through D18, and the non-redacted portion of D30.[2] We therefore conclude that pages D1 through and including D18, and the non-redacted portion of D30 are subject to being produced to plaintiffs. Our discussion on these documents does not end there.

Tex.R. Civ. P. 192.6 provides, in pertinent part:

(a) *Motion.* A person from whom discovery is sought, *and any other person affected by the discovery request,* may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought. . . .

(b) *Order.* To protect the movant from undue burden, unnecessary expense, *harassment, annoyance, or invasion of personal, constitutional, or property rights,* the court may make *any order in the interest of justice* and may— among other things— order that:

(1) the requested discovery not be sought in whole or in part;

(2) the extent or subject matter of discovery be limited;

. . . .

(4) the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court; ... [emphasis supplied]

■ From the record before us, including the deposition testimony of Wayne Pullen, the relator's plant protection manager and compiler and keeper of the documents in question, the individuals specifically named on the "restricted mill entry" list apparently had no knowledge of the existence or contents of such a list. Pages D1 through and including D10 contain not only names but also the apparent reasons given for restricting entry or access to relator's premises. Many reasons listed involve allegations of criminal behavior. Other allegations involve alleged conduct that is more embarrassing than criminal. A great many of the allegations involve nothing more than the named individual having apparently been injured while working on relator's premises. At any rate, the record before us does not indicate the truthfulness or the accuracy of any of the allegations made by Pullen as he compiled this list.

While we are in full agreement with the trial court as to the discoverability of the documents ordered produced, we cannot agree that, at this point in the litigation, said documents, especially pages D1 through and including D10, may be used by the plaintiffs for any purpose they see fit. Rule 192.6 clearly provides the opportunity to "any other person affected by the

---

**2.** Contained in the record before us is an affidavit of Logan Moss, assistant general counsel for relators. Moss states, "The production of the documents, as requested by the plaintiffs, would violate proprietary interests, violate the attorney-client privilege (See the privilege log attached hereto as Exhibit '3'), cause an unreasonable restraint in the manner in which defendants conduct business, and necessarily invade personal and private information, and improperly force defendants

to publish information that is both confidential and private." This is basically a conclusory statement except for the reference to the privilege log attached as an exhibit. A party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing. *In re Alford Chevrolet–Geo,* 997 S.W.2d 173, 181 (Tex.1999). At any rate, all of the documents listed on said privilege log were not produced per the trial court's order.

discovery request" to request that the trial court protect said affected person from "harassment," "annoyance," or "invasion" of a variety of rights including, we believe, a right to complete privacy. The trial court's order, as it currently stands, ignores what we find to be a compelling public interest manifested in the language contained in Rule 192.6 *vis à vis* unwitting third parties. We believe a discovery order affecting the privacy interests of persons who do not have notice of the litigation, while providing plaintiffs with the documents previously ordered, must also include protective language, e.g.:

1. The documents in question be provided in sealed envelopes marked confidential.

2. Only the counsel of parties to the instant lawsuit may have access to the documents in question.

3. The information contained in the documents in question shall not be shared with or disclosed to any other person, either directly or indirectly, unless otherwise ordered by the trial court.

4. No party, their agents or representatives, shall directly or indirectly contact any named individual nor undertake further discovery regarding such named individuals until permitted to do so by further order of the trial court.

5. The produced documents in question shall be returned to the producing party after final disposition of the instant lawsuit.

We emphasize that the protective order language to be included in the trial court's modified order is for the benefit of those individuals named in the documents to be provided to plaintiffs. At the same time, we recognize that plaintiffs have a motion for class certification on file with the trial court. Generally, a litigant will need some discovery to effectively support or oppose a class-certification motion. *In re Alford Chevrolet–Geo,* 997 S.W.2d at 181. Persons listed on the documents produced to plaintiffs may possibly stand to benefit if made aware of the existence of the instant litigation. On the other hand, if those same individuals were made aware of their rights to protection under Rule 192.6, some might wish to exercise their option to move for specific and explicit protection. While we in no way are inferring that counsel for the instant litigants would engage in any unethical conduct in communicating with the individuals named on the documents, we realize that in attempting to zealously represent a client's interests to the best of his or her ability, an attorney may, unintentionally, engage in conduct that some would consider to be overzealous. It is with this understandable yet possibly inappropriate conduct that we are most concerned, and with which we hope to spare those listed individuals who may want nothing more than to live their lives in peace and without fear of solicitation.[3]

Accordingly, we find an abuse of discretion by the trial court in ordering disclosure of the documents in question without effective protective order language for the benefit of the individuals named in said documents. We therefore conditionally grant the writ and direct the trial court judge to modify his order in accordance with this opinion. The writ will issue only should he fail to do so.

## WRIT CONDITIONALLY GRANTED.

---

**3.** While it is entirely up to the trial court to control and regulate the course of discovery in the instant litigation, one possible option is to consider the appointment of a master in chancery under the provisions of Tex.R. Civ. P. 171. It appears the "good cause" and "exceptional cases" requirements of Rule 171 are met under the very limited duties that a master would be appointed to undertake in the instant litigation. The trial court's order of reference could be strictly tailored to limit the master's powers solely to being the contact person *vis à vis* the named individuals. A master's impartiality would virtually ensure that the named individuals contacted would be provided with objective information from which to make an informed decision as to their options in the instant litigation.