**In re E.I. DuPONT DE NEMOURS AND COMPANY.**

No. 03–0464.

Supreme Court of Texas.

May 14, 2004.

M.C. Carrington, Beaumont, J. Kevin Clark, Fort Worth, Sandra French Clark, Beaumont, Dennis M. Conrad, Larry E. Cotten, Fort Worth, Gregory D. Smith, Tyler, Susan Jan Hueber, Fort Worth, for relator.

Glen W. Morgan, Christopher Michael Portner, Beaumont, for respondents.

PER CURIAM.

In the suit underlying this petition for mandamus, nearly 400 plaintiffs sued E.I. DuPont de Nemours ("DuPont") and over 100 other defendants for alleged asbestos-related injuries from 1935 to the present. In response to the plaintiffs' discovery request, DuPont asserted claims of attorney-client and/or work product privilege with respect to 607 documents.

On May 12, 2003, the trial court issued an order requiring DuPont to turn over most of the documents, ruling that DuPont had not made a prima facie showing of privilege. A divided court of appeals declined to grant mandamus relief. 133 S.W.3d 677. DuPont now seeks relief from this Court. DuPont contends that the trial court abused its discretion by holding a hearing on the plaintiffs' global challenge to all of the documents identified in its privilege log. DuPont further argues that the trial court abused its discretion by finding that DuPont had not made a prime facie showing of privilege for the documents at issue and refusing to conduct an in camera inspection of the documents before rejecting its privilege claims.

The court of appeals declined to grant DuPont mandamus relief. We agree with the court of appeals that the trial court did not abuse its discretion in holding a hearing on the plaintiffs' global challenge to DuPont's privilege claims. However, we conditionally grant the writ insofar as we conclude that DuPont made a prima facie showing of privilege for many of the approximately 530 documents that the trial court ordered produced without conducting an in camera review.

In response to plaintiffs' requests for production, DuPont produced over 55,000 pages of documents that go back more than 60 years. However, DuPont stated that it was withholding 607 documents, citing the attorney-client privilege found in Texas Rule of Evidence 503 and the work-product privilege set forth in Texas Rule of Civil Procedure 192.5. After the plaintiffs requested a privilege log,[1] DuPont

---

1. A "privilege log" is the commonly used term for a response pursuant to Texas Rule of Procedure 193.3(b) that: "1) describes the information or materials withheld that, without revealing the privileged information or otherwise waiving the privilege, enables other parties to assess the applicability of the privilege, and 2) asserts a specific privilege for each item or group of items withheld." The dissenting court of appeals opinion noted:

> The log is sufficiently detailed for the real parties in interest to assess the applicability of the specific privilege being asserted. See Tex.R. CIV. P. 193.3(b). For example, "DUP Bates Range 0903484–3484, Date 741029," a document from "Austin RE (Du-

Pont Legal)" to "Mfg Environmental Committee," copied to "Bonczek RR (DuPont Legal); Galloway WR; Helmers EN; Hildrew JC; Meany DM; Reichert RJ; Schmutz JF (DuPont Legal), and Sebree DB (DuPont Legal)," is a "Memo between DuPont counsel requesting legal advice and comments re: proposed amendments to regulations concerning national emissions standards for hazardous air pollutants."

133 S.W.3d 679. Neither the trial court nor the court of appeals majority opinion concluded that the log inadequately described the documents and the plaintiffs do not so argue in this court.

timely served the log describing the documents withheld. The plaintiffs then requested a hearing challenging DuPont's privilege claims for all of the documents. In response, DuPont filed an affidavit from its paralegal Walter Connor in support of its privilege claims and tendered the documents listed on the privilege log to the court for in camera inspection. In his affidavit, Connor stated, in relevant part:

> I have reviewed all names listed on the DuPont–Brignac privilege log that are identified as "DuPont Legal." I compared each "DuPont Legal" name for each document on the privilege log with a DuPont human resources database for the legal department. Each name that is identified as "DuPont Legal" on the privilege log is a name of a person who was, at the time indicated on the document, a DuPont attorney or DuPont paralegal as confirmed by the comparison with the human resources database.

Connor further averred:

> I have reviewed and am familiar with the definitions of client, representative of client, lawyer, representative of a lawyer, and confidential as defined in Rule 503 of the Texas Rules of Evidence. Based on my review of the DuPont human resources database for the legal department, the documents listed on the DuPont–Brignac privilege log, and the definitions in Rule 503, all the documents on the DuPont–Brignac privilege log with "DuPont Legal" names associated with a claim of attorney-client privilege indicate a lawyer or a representative of a lawyer engaging in confidential communications with a client or a representative of a client regarding professional legal services, or a lawyer or representative of a lawyer rendering professional legal services or performing a requested task for a client or a representative of a client involving the rendering of professional legal services.

Finally, Connor also stated:

> I have reviewed and am familiar with the definition of "work product" as defined in Rule 192.5 of the Texas Rules of Civil Procedure. Based on my review of the DuPont human resources database for the legal department, the documents listed on the DuPont–Brignac privilege log, and the definitions in Rule 192.5, all the documents on the DuPont–Brignac privilege log with "DuPont Legal" names associated with a claim of work product indicate material prepared or mental impressions developed in anticipation of litigation or for trial by or for DuPont or its representatives, or a communication in anticipation of litigation or for trial between DuPont and its representatives or among its representatives.

On April 29, 2003, the court conducted a hearing on DuPont's assertions of privilege. The court overruled DuPont's claims of privilege except as to 76 documents, which were ordered to be delivered for in camera review. The trial court excepted those 76 documents listed on the privilege log that were associated exclusively with members of "DuPont Legal," meaning that the author, recipient, and all parties that received copies of the document were members of "DuPont Legal." The trial court ordered DuPont to produce the remainder of the documents, consisting of: 1) documents with no "DuPont Legal" names associated, and 2) documents with both "DuPont Legal" and non-"DuPont Legal" names associated.

■■■■ The parties do not dispute that mandamus relief is generally available in this type of case. Mandamus relief is appropriate "to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court*

*of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ." *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Mandamus is proper when the trial court erroneously orders the disclosure of privileged information because the trial court's error cannot be corrected on appeal. *Id.* at 843. As DuPont would lose the benefit of the privilege if the documents at issue are disclosed, even if its assertions of privilege were later upheld on appeal, we conclude that this Court may provide mandamus relief in this case.

■■■ The party who seeks to limit discovery by asserting a privilege has the burden of proof. *Jordan v. Fourth Court of Appeals,* 701 S.W.2d 644, 648–649 (Tex. 1985). However, if a party asserting privilege claims makes a prima facie showing of privilege and tenders documents to the trial court, the trial court must conduct an in camera inspection of those documents before deciding to compel production. *Arkla, Inc. v. Harris,* 846 S.W.2d 623, 631 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding); *Shell Western E & P, Inc. v. Oliver,* 751 S.W.2d 195, 196 (Tex.App.-Dallas 1988, orig. proceeding). We have recognized:

> Generally, a trial court conducts an in camera inspection to determine if a document is in fact privileged. If it is not privileged, then it may become evidence that the factfinder may consider. If the document is privileged, it is not subject to discovery and may not be considered by the factfinder, even when the factfinder is the trial court.

*Goode v. Shoukfeh,* 943 S.W.2d 441, 448 (Tex.1997). The trial court abuses its discretion in refusing to conduct an in camera inspection when such review is critical to the evaluation of a privilege claim. *State v. Lowry,* 802 S.W.2d 669, 673–74 (Tex. 1991); *Loftin v. Martin,* 776 S.W.2d 145, 148 (Tex.1989); *Thibodeaux v. Spring Woods Bank,* 757 S.W.2d 856, 860 (Tex. App.-Houston [14th Dist.] 1988, no writ); *Shell Western E & P,* 751 S.W.2d at 196.

■■■ The prima facie standard requires only the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Tex. Tech Univ. Health Scis. Ctr. v. Apodaca,* 876 S.W.2d 402, 407 (Tex.App.-El Paso 1994, writ denied). The documents themselves may constitute sufficient evidence to make a prima facie showing of attorney-client or work product privilege. *Weisel Enters., Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986).[2]

The plaintiffs argue that Connor's affidavit is lacking in specificity. However, an affidavit, even if it addresses groups of documents rather than each document individually, has been held to be sufficient to make a prima facie showing of attorney-client and/or work product privilege. *See In re Toyota Motor Corp.,* 94 S.W.3d 819 (Tex.App.-San Antonio 2002, orig. proceeding); *In re Monsanto Co.,* 998 S.W.2d 917 (Tex.App.-Waco 1999, orig. proceeding); *In re Valero Energy Corp.,* 973 S.W.2d 453

---

**2.** The dissenting court of appeals opinion examined several of the memos that were among the documents containing both "DuPont Legal" and non-"DuPont Legal" names. Both the "DuPont Legal" names and the names without designation are written with the first and middle initials before the last name. The identical format of the two types of names and the inclusion of each recipient's middle initial suggest all of the recipients were DuPont employees. Some recipients of these memos appear to have been groups, such as "Dept Occ Health Mgrs" and "Asbestos Committee." This illustrates the additional evidence that may be adduced through an in camera review.

**224**

(Tex.App.-Houston [14th Dist.] 1998, orig. proceeding); *Shell Western E & P,* 751 S.W.2d at 196.

■■■■ In *Monsanto,* the affidavit of the corporate representative asserted that a log of 117 documents involved "in-house and/or outside attorneys for Monsanto, or other Monsanto employees, representatives or agents." *In re Monsanto Co.,* 998 S.W.2d at 927. The court of appeals held that this representation constituted a prima facie showing of the attorney-client and work product privilege. *Id.* In *Toyota,* the affidavit submitted by the defendant stated that one group of documents consisted of "[c]ommunications to Toyota counsel for the purpose of requesting legal advice or facilitating the rendition of professional legal service." *In re Toyota Motor Corp.,* 94 S.W.3d at 821. This representation was also found to be sufficient to establish a prima facie case of privilege. *Id.* at 823–24. In *Shell Western E & P,* Shell established a prima facie case of attorney-client privilege where a Shell affiant swore that the "documents ... were written by a lawyer to a client" and "consist of communications from a client to a Shell ... lawyer...." *Shell Western E & P,* 751 S.W.2d at 196. However, an affidavit is of no probative value if it merely presents global allegations that documents come within the asserted privilege. *Ryals v. Canales,* 767 S.W.2d 226, 229 (Tex.App.-Dallas 1989, orig. proceeding). The plaintiffs contend that the affidavit at issue here is not probative because it is conclusory. The plaintiffs maintain that Connor's affidavit is indistinguishable from the affidavit found insufficient to support attorney-client privilege in *In re Temple–Inland, Inc.,* 8 S.W.3d 459 (Tex.App.-Beaumont 2000, orig. proceeding). However, the affidavit in *Temple–Inland* that was found to be conclusory merely stated that production "would violate the attor-

ney-client privilege." *Id.* at 462. Connor's affidavit more closely resembles the affidavits in *Monsanto* and *Toyota,* as it sets forth the factual basis for the applicability of the attorney-client and/or work product privileges to the documents at issue. Additionally, while Connor did not attest to the specific contents of each of the 607 documents at issue, the plaintiffs are unable to identify any such legal requirement and do not dispute that the log submitted by DuPont contains a summary of each document. Thus, we find that the specificity of Connor's affidavit and the log taken together are reasonably adequate to establish a prima facie case of privilege given that the documents at issue go back more than 60 years.

■■■■ The plaintiffs also contend that Connor's affidavit is not probative because it is not based on personal knowledge. For an affidavit to have probative value, an affiant must swear that the facts presented in the affidavit reflect his personal knowledge. *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994). Connor swore that his statements were based on his "personal knowledge of the facts stated in the affidavit." Even though Connor later explained that his determinations were "[b]ased on [his] review of the DuPont human resources database for the legal department," an affiant's acknowledgment of the sources from which he gathered his knowledge does not violate the personal knowledge requirement. *See Grotjohn Precise Connexiones Int'l v. JEM Fin., Inc.,* 12 S.W.3d 859, 866 (Tex.App.-Texarkana 2000, no pet.). Therefore, we hold that Connor's affidavit satisfies the personal knowledge requirement.

Three discrete categories of documents are in dispute. First, there are the documents which have only "DuPont Legal" names associated with them. The trial court ordered an in camera review of these

76 documents. Second, there are those documents that have both "DuPont Legal" and other names associated with them. The trial court denied DuPont's claim of privilege with respect to these documents without ordering an in camera review. Finally, there are those documents which do not have any "DuPont Legal" name associated with them. The trial court also rejected DuPont's claim of privilege concerning these documents.

We conclude that the trial court did not abuse its discretion in sustaining DuPont's privilege claims with respect to the first category of documents. The log submitted by DuPont combined with Connor's affidavit clearly make a prima facie case that those documents with only "DuPont Legal" names associated with them are covered by the attorney-client and/or work product privileges. Consequently, the trial court correctly determined that DuPont was entitled to at least an in camera review of those documents.

We also conclude that DuPont established a prima facie case of privilege with respect to the second category of documents, which contained both "DuPont Legal" and other names. Thus, we find that the trial court erroneously rejected DuPont's privilege claim as applied to these documents without at least subjecting them to an in camera review.

There is no presumption that documents are privileged, and there is no presumption that a party listed on the privilege log is an authorized person under the rule governing the privilege. *Cigna Corp. v. Spears*, 838 S.W.2d 561, 565–66 (Tex.App.-San Antonio 1992, orig. proceeding). Nevertheless, Connor provided sufficient indication of the relationship between the "DuPont Legal" and the non-"DuPont Legal" persons on the privilege log to establish a prima facie case of privilege. In his description of the allegedly privileged documents, Connor identified the non-"DuPont Legal" persons on the privilege log as authorized parties for purposes of attorney-client and/or work product privilege. Connor swore that the documents allegedly privileged as attorney-client materials "indicate a lawyer or representative of a lawyer engaging in communication . . . or performing a requested task . . . for a client or representative of a client." The implication of this statement is that, whatever the relationship between the "DuPont Legal" and the non-"DuPont Legal" parties listed on the privilege log, it was a relationship within the scope of the attorney-client and/or work product privilege. In light of the tests for demonstrating attorney-client and work product privilege[3] and the fact that the hundreds of

---

3. Connor did not specifically assert that each recipient was a DuPont supervisor. However, for attorney-client privilege, the subject matter test has replaced the control group test pursuant to the amendment of Rule of Evidence 503. Tex.R. Evid. 503(a)(2) & cmt; *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 197–98 (Tex.1993). The subject matter test is met where "the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *Nat'l Tank*, 851 S.W.2d at 198. As such, the attorney-

client privilege may apply to communications between attorneys and employees who are not executives or supervisors.

The plaintiffs point out that Connor's affidavit does not exclude the possibility that some of the recipients of documents within the second group were not DuPont employees. However, the work product privilege is not necessarily waived by disclosure to a non-employee, as there are numerous other classes of individuals who can qualify.

"Work product" is defined as:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's

documents at issue span more than 60 years, this statement combined with the log summarizing each document is sufficient to establish at least a prima facie case of privilege that is then subject to in camera review.[4] Because DuPont has established a prima facie case of privilege as to the second category of documents, which bear both "DuPont Legal" and non-"DuPont Legal" designations, we conclude that it was entitled to an in camera review before being required to produce these documents.

■ Finally, we agree with the trial court that DuPont has not established a prima facie case of privilege with respect to the third category of documents containing no "DuPont Legal" names. Connor's affidavit offers no evidence to justify privilege assertions concerning these documents. Connor's affidavit attested to the privileged nature of "[a]ll the documents on the DuPont–Brignac privilege log with 'DuPont Legal' names associated with a claim of attorney-client privilege" and "[a]ll the documents on the DuPont–Brignac privilege log with 'DuPont Legal' names associated with a claim of work product privilege." The affidavit was silent as to any claim of privilege regarding the documents that do not bear a "DuPont Legal" name. Accordingly, we agree with the appeals court that the trial court did not abuse its discretion in ruling that DuPont failed to make a prima facie case of

privilege with respect to those documents containing no "DuPont Legal" names.

■ DuPont also argues on appeal that the plaintiffs' global challenge to their privilege claims was not sufficient to place those claims at issue. DuPont contends that the trial court abused its discretion by allowing a hearing based on the plaintiffs' global challenge to DuPont's entire privilege log. DuPont maintains that, prior to the hearing, the plaintiffs should have been required to particularize their objections to specific documents in the privilege log.

DuPont cites two cases in support of its argument. First, DuPont references *In re Carbo Ceramics, Inc.*, 81 S.W.3d 369 (Tex. App.-Houston [14th Dist.] 1988, orig. proceeding), but this case is inapposite. In *Carbo*, the court found that the plaintiff "did not challenge the privileged nature of all privileged documents," but instead placed only one letter at issue. *Id.* at 375. *Carbo* is distinguishable because it is not disputed here that the plaintiffs challenged the privileged nature of all documents in the log. DuPont also relies on *Monsanto*, which held in part:

> When the party asserting a privilege has made a prima facie case for its claim, the requesting party has the burden to point out to the court which specific documents or groups of documents it believes require inspection. Otherwise, trial judges will be required to inspect untold numbers of documents. The re-

---

representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

    (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

Tex.R. Civ. P. 192.5(a).

4. Evidence corroborating or rebutting a prima facie case of privilege could be found

upon in camera review. The documents themselves may contain evidence indicating the positions held by the non-"DuPont legal" recipients and the extent to which their duties relate to the matters upon which legal advice is being given. Plaintiffs are also entitled to put on their own evidence on privilege issues. See Tex.R. Civ. P. 193.4. For example, plaintiffs could submit interrogatories seeking additional information about the individuals listed as authors or recipients of disputed documents.

questing party should be in a position to do so based upon (1) the contents of the privilege log, (2) other discovery and documents, (3) discovery specifically designated to test the claim of privilege, and (4) the evidence at the hearing.

*In re Monsanto Co.,* 998 S.W.2d at 925.

It is clear that *Monsanto* stands only for the proposition that the party seeking discovery must specify its challenges to the privilege log after the party asserting privilege claims has made a prima facie case. The discovery rules provide that any party may request a hearing on a claim of privilege and the party asserting the privilege must present any evidence necessary to support the privilege. Tex.R. Civ. P. 193.4(a). This provision does not contain a requirement that the party seeking discovery specify their rationale for objecting to each document before requesting a hearing.[5] Accordingly, the trial court did not abuse its discretion by holding a hearing on the plaintiffs' objection to DuPont's privilege log, which challenged whether DuPont had established a prima facie case of privilege for all of the documents it withheld.

For the foregoing reasons, we conditionally grant DuPont's petition for mandamus relief from the trial court ruling insofar as the ruling denied DuPont's privilege claim without conducting an in camera review with respect to the documents containing both "DuPont Legal" and non-"DuPont Legal" names. Accordingly, pursuant to Texas Rule of Appellate Procedure 52.8 and without hearing oral argument, we direct the trial court to vacate in part its

May 12, 2003 order and to conduct further proceedings consistent with this opinion. We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

---

5. We hold simply that the trial court did not abuse its discretion by holding a hearing. We do not suggest that a trial court would abuse its discretion by requiring, at such a hearing or otherwise, that the proponent of the discovery request state their objection to the claimed privilege specifically as to each document on the privilege log. Where large numbers of documents are at issue, such an approach may promote judicial economy by focusing in camera review on those documents where there is a genuine dispute as to the application of the privilege and by clarifying the nature of the dispute so the court can hone in on the probative content of each document.