Opinion issued October 13, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00679-CV 




IN RE BP PRODUCTS NORTH AMERICA INC., Relator




Original Proceeding on Petition for Writ of Mandamus 




O P I N I O N

           By petition for writ of mandamus, relator, BP Products North America Inc., 
challenges the trial court’s July 19, 2006 order granting the motion of the real parties
in interest, the Plaintiffs’ Steering Committee (“Plaintiffs”),


 to compel production
of documents used by BP to compute a reserve figure reported to the Securities and
Exchange Commission (“SEC”).


 Days after the March 23, 2005 explosion at the
Texas City refinery, BP reported that it had reserved $700 million to resolve its
estimated liability for personal injuries and fatalities arising from the incident. The
Plaintiffs sought discovery of the documents used to compute the reserve figure.
          In two issues, BP contends that the trial court abused its discretion by
compelling the production of the materials reviewed to compute the reserve because
(1) these materials are protected by the attorney-client and work product privileges
and (2) disclosure of the final numerical sum to the SEC did not waive the attorney-client and work product privileges that attached to the underlying materials.
          We conditionally grant the petition for writ of mandamus.
Background


Shortly after the March 2005 explosion, BP filed with the SEC a “Report on
Form 6-K”


 stating that a reserve of $700 million would be set aside to resolve the
projected claims for personal injuries and fatalities arising from the incident. The
reserve figure was computed by William Noble, an in-house attorney at BP who was
working on claims in the instant suit and who had handled prior suits against BP. The
materials Noble used to compute the figure and his methodology were not disclosed
to the SEC; rather, only the $700 million figure was disclosed. 
          Subsequently, the Plaintiffs sought the supportive materials in a request for
production,


 as follows:
With respect to the statement in your Form 6-K filing with the Securities
and Exchange Commission on or about July 26, 2005 that “$700 million
(of the second quarter net charge) is in respect of all fatality and
personal injury compensation claims associated with the incident at the
Texas City refinery on 23 March 2005,” please produce true and correct
copies of the following:
          a.       All documents reviewed or used by the person(s) responsible for
the valuation of the “$700 million” charge taken in the second
quarter of 2005;
          b.       All documents reviewed or used by the person(s) who authorized
the “$700 million” charge taken in the second quarter of 2005;
and
          c.       All documents that relate to the method used to evaluate and/or
quantify the “$700 million” charge taken in the second quarter of
2005.
BP objected on the ground that the request was overly broad, and BP stated that it
would withhold the documents as protected by the “work-product and/or attorney-client privilege.”

          On April 17, the Plaintiffs filed a motion to compel production on the grounds
that (1) the methodology underlying the computation of the reserve figure constitutes
business advice not subject to the attorney-client or work product privileges and (2)
BP waived any such privileges by disclosing the $700 million figure to the SEC and
to the media. 

          On April 20, BP responded that its disclosure of the $700 million figure was 
not privileged, but that the materials used to compute the figure, along with Noble’s
methodology, were privileged, had not been disclosed, and were irrelevant to the
instant litigation. BP appended the affidavit of Noble, in which he attested as
follows, in pertinent part:

          4.       . . . The estimate was prepared by me, acting in my role as in-house lawyer for BP Products, and as one of the lawyers working
on the lawsuits arising out of the March 23 accident, using the
knowledge I gained as a lawyer on those cases, as well as work
product documents and attorney-client communications, all from
those lawsuits.
          5.       In preparing this estimate to be included in a Report on Form 6-K,
and as is normal when the financial impact is caused by lawsuits,
I chose and used confidential information (e.g., legal and factual
analyses of the claims and lawsuits) that I knew from my work on
the lawsuits to provide my estimate of potential exposure. The
estimate itself is not confidential, but the analysis, mental
processes and the selection of the documents I used to arrive at
the estimated amount are confidential and is the same information
and the same process I have used to assess and make settlement
offers or to evaluate possible verdicts against my client, BP
Products.
          6.       The documents are material prepared or mental impressions
developed in anticipation of litigation or for trial of the claims
made concerning the March accident by BP Products’ attorneys,
consultants, employees, or agents; or were communications made
in anticipation of litigation or for trial between BP Products and
BP Products’ representatives or among BP Products’
representatives, including BP Products’ attorneys, consultants,
employees, or agents. BP Products was sued on the same day as
the accident and thus reasonably anticipated litigation as of that
date.
          7.       Some of the documents reflect confidential communications made
for the purpose of facilitating the rendition of professional legal
services to BP Products with regard to the March 2005 accident: 
(A) between BP Products or a representative of BP Products and
BP Products’ lawyer or a representative of the lawyer; (B)
between the lawyer and the lawyer’s representative; (C) between
representatives of BP Products; or (D) among lawyers and their
representatives representing BP Products. These documents were
not disclosed to anyone other than the personnel who assisted in
the rendition of legal advice to BP Products.
          8.       All the work performed in providing the estimate for the Report
on Form 6-K, as well as all of the documents and
communications, were done or created after the March 23, 2005
accident. Additionally, the work and the documents were done or
created after BP Products retained lawyers to represent it in
connection with the claims arising out of the March 2005
accident, and concern the litigation about the March 2005
accident. Accordingly, the documents are exempted from listing
on the privilege log under Rule 193.3(c).
          On the same day that BP filed Noble’s affidavit, the trial court held a hearing
on the motion to compel. The Plaintiffs objected that Noble’s affidavit was untimely,
because it had not been filed seven days before the hearing.


 The trial court ruled that
it would “let it in” but that the Plaintiffs would be permitted more time to review it. 
In addition, the trial court instructed the parties to file supplemental briefs concerning
the discoverability of the methodology used to estimate the reserve. 

          In their supplemental brief, the Plaintiffs objected that Noble’s affidavit was
fatally defective because it was conclusory due to its failure to identify any
documents in any manner. In addition, the Plaintiffs reasserted the argument that
BP’s public disclosure of the reserve figure resulted in its waiver of any privilege
relating to the figure. BP argued in its supplemental brief that no waiver had taken
place. 

          On July 19, the trial court granted the Plaintiffs’ motion to compel, sustaining
the Plaintiffs’ objections to Noble’s affidavit, as follows:1)Defendant has failed to sustain its burden to show the absence of
waiver of any privilege or protection that may once have attached
to the subject matter of Request No. 20;
          2)      Defendant has waived any privilege or protection that may once
have attached to the subject matter of Request No. 20 by self-serving, partial, voluntary, disclosure causing unfairness to an
opposing litigant who does not have access to such information;
          3)      Defendant has waived any privilege or other protection that may
once have attached to the subject matter of Request No. 20 by
voluntary extra-judicial disclosure on its web-site and in its public
comments and speeches [of which the court takes judicial notice]
and through a well-orchestrated media campaign that has
repeatedly incorporated such information.
          4)      Defendant has waived any privilege or other protection that may
once have attached to the subject matter of Request No. 20 by
voluntary disclosure to the federal government and because such
public disclosure was intended; and
          5)      Based upon the admissions of defense counsel, among other
things, the documents requested do not constitute work-product
and constitute non-privileged business advice.
          It is therefore ORDERED:
          1)      Plaintiffs’ objections to the Affidavit of William Nobles [sic],
which Defendant has not corrected, are sustained.
          2)      Defendants shall produce documents responsive to Request No.
20, Plaintiff’s Third Set of Discovery, by no later than Monday,
August 1, 2006.
          3)      In the event Defendant believes that any responsive document is
independently privileged or protected for reasons unrelated to
Request No. 20, it may submit such document for in camera
inspection or list such documents on an amended privilege list by
not later than July 28, 2006. The fact of such submission or
listing on a privilege list shall not constitute waiver of any
applicable and extant privilege or protection. 
It is from this order that BP seeks mandamus relief.

Discovery of Privileged DocumentsBP contends that the trial court abused its discretion by ordering the production
of documents that are protected by the attorney-client and work product privileges. 
The Plaintiffs contend that BP failed to meet its burden to present evidence to support
its asserted privileges.
A.      Standard of Review
            Generally, the scope of discovery is within the trial court’s discretion. In re
Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998). However, a trial court that
issues a discovery order that is arbitrary and unreasonable, or without reference to
guiding rules and principles, abuses its discretion. Id. If there has been a clear abuse
of discretion and there is no adequate remedy by appeal, mandamus will issue. Id. 
There is not an adequate remedy by appeal when a trial court erroneously orders the
disclosure of privileged information because the error cannot be corrected once the
benefit of the privilege is lost. Walker v. Packer, 827 S.W.2d 833, 843 (Tex. 1992).
B.      The Law
              There is no presumption that documents are privileged, and the party seeking
to resist discovery bears the burden of pleading and proving an applicable privilege.
In re E.I. DuPont de Nemours and Co., 136 S.W.3d 218, 223, 225 (Tex. 2004);
Weisel Enters., Inc. v. Curry, 718 S.W.2d 56, 58 (Tex. 1986). To meet its burden, the
party seeking to assert a privilege must make a prima facie showing of the
applicability of a privilege by first asserting the privilege. In re E.I. DuPont de
Nemours and Co., 136 S.W.3d at 223 (citing Peeples v. Hon. Fourth Supreme
Judicial Dist., 701 S.W.2d 635, 637 (Tex. 1985)). “Asserting a Privilege” is
governed by Texas Rule of Civil Procedure 193.3. Tex. R. Civ. P. 193.3. 
            In response to a discovery request, a party may assert a claim of privilege under
Rule 193.3(c). Tex. R. Civ. P. 193.3(c). Rule 193.3(c) states, as follows:
[A] party may withhold a privileged communication to or from a
lawyer or lawyer’s representative or a privileged document of a
lawyer or lawyer’s representative—
(1) created or made from the point at which a party consults a
lawyer with a view to obtaining professional legal services from
the lawyer in the prosecution or defense of a specific claim in the
litigation in which discovery is requested, and 
(2) concerning the litigation in which the discovery is requested.”



Id. When a privilege is asserted under Rule 193.3(c), a party need not comply with
Tex. R. Civ. P. 193.3(a) and (b), which require, upon request, a description of the
information or materials withheld, often referred to as a privilege log, and an
assertion of a specific privilege for each item or group of items withheld. Tex. R.
Civ. P. 193.3(a), (b), (c). 

          Once a party has asserted a claim of privilege, the trial court may, upon the
request of any party, conduct a hearing to determine whether the discovery should be
disallowed. Tex. R. Civ. P. 193.4 (a). At the hearing, the party asserting the privilege
must present any evidence necessary to support the privilege. Id.; see also In re
Monsanto, 998 S.W.2d 917, 926 (Tex. App.—Waco 1999, orig. proceeding)
(explaining that asserting privilege and providing proof to support privilege are
distinct concepts). This evidence may be in the form of “testimony presented at the
hearing or affidavits served at least seven days before the hearing or at such other
reasonable time as the court permits.” Tex. R. Civ. P. 193.4 (a). If, after examining
the proof, “the trial court determines that an in camera review of some or all of the
requested discovery is necessary, that material or information must be segregated and
produced to the court in a sealed wrapper within a reasonable time following the
hearing.” Id.; see Curry, 718 S.W.2d at 58. 

          A trial court abuses its discretion if it refuses to conduct an in camera
inspection when such review is critical to the evaluation of a privilege claim. In re
E.I. DuPont de Nemours and Co., 136 S.W.3d at 223. When a claim for protection
is based upon the attorney-client privilege, the documents themselves may be the only
evidence substantiating the privilege. Curry, 718 S.W.2d at 58. 

          If disclosure of the subject materials or information to third parties has
occurred, the party asserting the privilege bears the burden to show that the applicable
privilege has not been waived. Jordan v. Court of Appeals for Fourth Supreme
Judicial Dist., 701 S.W.2d 644, 649 (Tex. 1985). 

C.      Analysis

            Here, BP has the burden to assert and prove an applicable privilege. See In re
E.I. DuPont de Nemours and Co., 136 S.W.3d at 223; Curry, 718 S.W.2d at 58. BP
asserted the attorney-client and work product privileges. Stated generally, Texas
Rule of Evidence 503 (“the attorney-client privilege”) protects from disclosure
confidential communications made for the purpose of facilitating the rendition of
legal services between the client and the client’s lawyer. Tex. R. Evid. 503. Texas
Rule of Civil Procedure 192.5 (“the work product privilege”) protects from disclosure
“material prepared or mental impressions developed in anticipation of litigation or for
trial by or for a party, or a party’s representatives,” and “a communication made in
anticipation of litigation or for trial between a party and the party’s representatives
or among the party’s representatives.” Tex. R. Civ. P. 192.5. An assertion that
material or information is work product is an assertion of privilege. Id. 192.5(d). 
Core work product, which is “the work product of an attorney or an attorney’s
representatives that contains the attorney’s or the attorney’s representatives mental
impressions, opinions, conclusions, or legal theories,” is not discoverable. Id.
192.5(b)(1). Other work product is discoverable “only upon a showing that the party
seeking discovery has substantial need of the materials in preparation of the party’s
case and the party is unable without undue hardship to obtain the substantial
equivalent of the material by other means.” Id. 192.5(b)(2). 

          Because BP asserted the attorney-client and work product privileges
concerning the documents responsive to the Plaintiffs’ discovery request under Rule
193.3(c), BP was relieved of asserting these privileges in a privilege log. See Tex.
R. Civ. P. 193.3(c). The Plaintiffs requested a hearing on BP’s assertions. See Tex.
R. Civ. P. 193.4(a). At the hearing, BP introduced the affidavit of Noble to support
its assertions of privilege. See id.

          The Plaintiffs contend that Noble’s affidavit, BP’s sole proof, is fatally
defective because it is conclusory in that it makes only global allegations. 
Specifically, the Plaintiffs contend that Noble merely attested that “some of the
documents reflect confidential communications” and fail to reference any specific
document. The trial court sustained the Plaintiffs’ objections. 

          Global allegations in an affidavit constitute no evidence to support a claim of
privilege. In re E.I. DuPont de Nemours and Co., 136 S.W.3d at 224. An affidavit
is conclusory if it provides no factual bases for the applicability of the privileges
asserted. Id. 

          However, here, Noble’s verified affidavit provides factual bases for the
applicability of the attorney-client and work product privileges. Noble attests that 

•        he prepared the estimate in his role as in-house lawyer for BP Products and as
one of the lawyers working on the lawsuits arising out of the March 23
accident;

•        he prepared the estimate by using knowledge that he gained as a lawyer on
those cases, as well as work product documents and attorney-client
communications;

•        he used confidential information (e.g., legal and factual analyses of the claims
and lawsuits) that he knew from his work on the lawsuits to provide his
estimate of potential exposure based on the same information he has used to
assess and make settlement offers or to evaluate possible verdicts against his
client, BP Products;

•        he used documents that consist of material prepared or mental impressions
developed in anticipation of litigation or for trial of the claims made
concerning the March accident by BP Products’ attorneys, consultants,
employees, or agents; or were communications made in anticipation of
litigation or for trial between BP Products and BP Products’ representatives or
among BP Products’ representatives, including BP Products’ attorneys,
consultants, employees, or agents; 

•        he performed all of the work, created all of the documents, and engaged in all
communication, in providing the estimate for the figure reported, after the
March 23, 2005 accident and after BP Products retained lawyers to represent
it in connection with the claims arising out of the March 2005 accident, and

 
•        he states that all of the documents concern the litigation about the March 2005
accident and are thus exempted from listing on the privilege log under Rule
193.3(c).

          The affidavit is sufficient to satisfy the initial burden imposed on BP by rules
193.3 and 193.4, and by E.I. DuPont de Nemours and Co. See Tex. R. Civ. P.
193.3(c), 194(a); E.I. DuPont de Nemours and Co., 136 S.W.3d at 223 (explaining
that “[t]he prima facie standard requires only the minimum quantity of evidence
necessary to support a rational inference that the allegation of fact is true”). 

          Specifically, the affidavit supports a claim of privilege under Rule 193.3(c) by
stating that the documents were created after BP hired lawyers concerning the
litigation at issue here and that the documents concern BP’s attorney’s internal
assessment of the worth of the lawsuit, such as a settlement negotiation. As noted
above, Rule 193(c) specifically exempts a party claiming a privilege under that
section from producing a description of the information or materials withheld. See
Tex. R. Civ. P. 193.3(a), (b), (c). Noble provides factual bases for BP’s assertion that
the documents in question constituted confidential communications made for the
purpose of facilitating the rendition of legal services between the client and the
client’s lawyer. See Tex. R. Evid. 503. In addition, Noble provides factual bases for
BP’s assertion that the documents in question constituted work product, in the form
of “material prepared or mental impressions developed in anticipation of litigation or
for trial” by or for a party, or a party’s representatives, and “a communication made
in anticipation of litigation or for trial” between a party and the party’s
representatives or among the party’s representatives. See Tex. R. Civ. P. 192.5. In
addition, the emphasized language provides factual bases for BP’s assertion that
documents at issue constitute core work product, in the form of Noble’s “mental
impressions, opinions, conclusions, or legal theories.” See id. 192.5(b)(1). 

          In addition, the Plaintiffs contend that Noble’s affidavit fails to address any
specific documents. BP responds that Noble’s affidavit is like those found sufficient
in DuPont and Shell. In re E.I. DuPont de Nemours and Co., 136 S.W.3d at 223–24;
Shell Western E&P, Inc. v. Oliver, 751 S.W.2d 195, 196 (Tex. App.—Dallas 1988,
orig. proceeding). In DuPont, the supreme court held that, “[a]n affidavit, even if it
addresses groups of documents rather than each document individually, has been held
to be sufficient to make a prima facie showing of attorney-client and/or work product
privilege.” In re E.I. DuPont de Nemours and Co., 136 S.W.3d at 223–24. In Shell
Western E & P, Shell established a prima facie case of attorney-client privilege where
a Shell affiant swore that the “documents . . . were written by a lawyer to a client” and
“consist of communications from client to a Shell . . . lawyer.” Shell Western E&P,
Inc., 751 S.W.2d at 196. We conclude, however, that DuPont and Shell are
inapplicable to a determination of the sufficiency of the affidavit in the instant case
because, in both DuPont and in Shell, some form of document identification took
place. See E.I. DuPont de Nemours and Co., 136 S.W.3d at 222 (stating that Dupont
served a privilege log describing the documents withheld); Shell Western E&P, Inc.,
751 S.W.2d at 196 (stating that “there is no dispute that Shell specifically pleaded the
attorney-client privilege for each of the documents it wished to withhold”). 

          BP contends that the specific details of each document are restricted to avoid
unintentionally disclosing attorney-client communications and work product
information. For this reason, however, the documents themselves constitute the only
sufficient evidence substantiating the claim of privilege. See Shell Western E & P,
Inc., 751 S.W.2d at 196 (explaining that “[t]he documents themselves may constitute
the only sufficient evidence, and certainly the best evidence, conclusively
substantiating–or overcoming–the claim of privilege, and, under the facts . . . the trial
court ‘had no choice but to review the allegedly privileged documents’”); Curry, 718
S.W.2d at 58 (holding that “when . . . the claim for protection is based on a specific
privilege, such as attorney-client or attorney work product, the documents themselves
may constitute the only evidence substantiating the claim of privilege”). 

            Moreover, in Curry, the supreme court reviewed a “summary listing of
documents under the heading ‘Attorney-Client/Attorney Work-Product” and held that
this “was no evidence that any particular document was protected by a specific
privilege.” See 718 S.W.2d at 58. Notably, the court held that, even in the total
absence of evidence to support the privilege, the trial court had no choice but to
conduct in camera inspection. Id. (disagreeing with appellate court’s holding that
whether to conduct in camera inspection of documents claimed to be privileged is
purely an exercise of trial court’s discretion). 

          In challenging BP’s assertion of privilege, the Plaintiffs requested in camera
inspection, which the trial court initially appeared to agree was necessary for it to rule
on the issue. During the hearing, the trial court stated, “I think on the request for the
underlying documents I think I’m going to have to look at them.” The trial court,
however, never conducted the in camera hearing, nor did it order BP to produce the
documents for inspection.

          We conclude that the trial court abused its discretion in determining that
Noble’s affidavit was conclusory and, therefore, insufficient to assert the applicability
of the attorney-client and work product privileges. Waiver 

          We next consider whether BP waived the attorney-client and work product
privileges by disclosure to third parties. See Jordan, 701 S.W.2d at 649. BP
contends that its disclosure of the $700 million reserve figure to the SEC and to the
media did not waive its attorney-client and work product privileges as to the
supporting documents and methodology that the Plaintiffs seek through discovery. 
We agree.

          BP, as a public company subject to the securities laws, is compelled to file
periodic financial statements with the SEC. See 15 U.S.C. § 781; 17 C.F.R.
§ 240.13a-1. When an event occurs between periodic reports that may impact the
company’s financial stability, as here, additional reports must be filed. Here,
subsequent to the explosion, BP reported to the SEC the amount of cash reserve that
Noble projected would be necessary for BP to set aside to cover the costs of the
claims stemming from the incident. In his affidavit, Noble attested that BP’s
disclosure was specifically limited to the final $700 million figure and that no
underlying methodology or information was disclosed outside of BP personnel. 

          The Plaintiffs contend that BP’s disclosure of the reserve figure to the SEC
operated as a general waiver of any privileges that may have attached to the
underlying documents. As the Plaintiffs contend, precedent as to waiver in this
context is limited because Texas state courts have not spoken to the issue and there
is disagreement among the federal circuit courts.


 The rule that the Fifth Circuit
appears to espouse is that disclosure of materials in the course of complying with
reporting requirements of governmental agencies can act as a complete waiver of the
attorney-client and work product privileges as to all other parties. See United States
v. El Paso, Co., 682 F.2d 530, 538–40 (5th Cir. 1982). 

          In El Paso, the Fifth Circuit explained that publicly-held companies must file
certain financial statements with the SEC and that these statements must reflect that
monies have been set aside to cover contingent future tax liabilities owed to the IRS. 
Id. at 534. The analysis supporting the sum of the projected liability reported is
known as the “tax pool analysis.” Id. These analyses are verified by independent
auditors. Id. at 540. There, to comply with securities laws, El Paso reported to the
SEC its contingent future tax liabilities. Id. at 533–34. Hence, there, as in the instant
case, we have a corporation reporting a sum to a governmental agency that is derived
from an underlying analysis of the corporation’s potential liability. There, unlike in
the instant case, El Paso’s analyses were also disclosed to independent auditors. 

          In El Paso, the IRS sought “all analyses prepared by the El Paso Company
regarding potential tax liabilities and tax problems.” Id. at 533. When El Paso
refused, the IRS issued a summons. Id. El Paso objected, asserting the attorney-client and work product privileges. Id. The trial court ordered production. Id.

          On review, the Fifth Circuit held that the attorney-client privilege did not
protect El Paso’s tax pool analysis because, by disclosing the analyses to the
independent auditors, El Paso had “breached the confidentiality needed to shield its
attorney-client communications.” Id. at 542. The court explained that “disclosure of
any significant portion of a confidential communication waives the privilege as to the
whole.” Id. at 538.

          While the rationale in El Paso shows that disclosure can operate as a waiver,
El Paso is clearly distinguishable from the case at hand. In El Paso, portions of the 
tax pool analysis were disclosed to independent auditors. Here, BP strictly limited
its disclosure to the reserve figure itself and there has been no disclosure of BP’s
methodology outside of BP personnel. 

          Accordingly, we conclude that BP has not waived its attorney-client and work
product privileges with regard to the underlying methodology.

Conclusion We hold that the trial court abused its discretion by concluding that Noble’s
affidavit was conclusory and by striking the affidavit as insufficient to invoke BP’s
asserted privileges. As acknowledged in oral argument, BP has requested that we
hold that the documents are privileged without an in camera review or, in the
alternative, that we order that an in camera review be conducted. We do not reach
these questions. Our holding today is limited to the conclusion that the affidavit is
not conclusory, and we remand to the trial court for further proceedings consistent
with this opinion. 

          Accordingly, we conditionally grant BP’s petition for writ of mandamus and
direct the trial court to vacate its July 19, 2006 order compelling production of the
documents responsive to “Request for Production No. 20” of “Plaintiffs’ Third Set
of Written Discovery.” We lift our stay of proceedings ordered July 27, 2006. We
are confident that the trial court will promptly comply, and our writ will issue only
if it does not.

 
 
                                                             Elsa Alcala

                                                             Justice

 
Panel consists of Justices Taft, Alcala, and Higley.