

# NUMBER 13-21-00168-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DORA GUZMAN, NORMA CADRIEL
HERNANDEZ, AND RUBI MORENO,**                                    **Appellants,**

**v.**

**LOUIS SOROLA,**                                                        **Appellee.**

---

On appeal from the 197th District Court
of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Justice Silva**

This is an interlocutory appeal from an order denying a motion to dismiss under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 *et seq*. Appellee Louis Sorola sued appellants Dora Guzman, Norma Cadriel

Hernandez, and Rubi Moreno[1] alleging defamation per se (libel and slander), business disparagement, intentional infliction of emotional distress, civil conspiracy, and aiding and abetting. Sorola sought to hold appellants liable for their involvement in the creation and dissemination of YouTube videos which Sorola alleged "blacken[ed]" his personal and professional reputation as a former associate judge and district judge candidate.

Appellants contend the trial court erred because Sorola's defamation, business disparagement, and intentional infliction of emotional distress claims fall within the scope of the TCPA, and Sorola failed to produce clear and specific evidence showing a prima facie case for each element of these claims. We affirm in part and reverse and remand in part.

## I.   BACKGROUND

### A.    Guzman's Human Resources Complaint

On October 1, 2017, Sorola was sworn in as a magistrate court judge in Cameron County, Texas. At the time, Guzman was the magistrate court administrator and Moreno was a part-time deputy court clerk.

On April 11, 2018, Guzman filed a complaint with human resources (HR) alleging Sorola had engaged in retaliation, abuse of official capacity "by [i]ntimidation," and sexual harassment.[2] The complaint stated, in relevant part, that "Sorola started doing favors for not only his friends but friends of his wife" shortly after being sworn into office. Guzman

---

[1] This suit concerns several additionally named co-defendants who are not parties to this appeal.

[2] In Sorola's response to appellants' motion to dismiss, Sorola states that Guzman filed a 500-page complaint with HR "about Sorola as a Judge," alleging "Sorola abused his official capacity *as a judge* by intimidation." Although the clerk's record on appeal is in excess of a thousand pages, the only complaint by Guzman to HR in the record spans eight pages.

provided specific examples of incidents when Sorola had asked her to work after hours on evenings and weekends to accommodate friends.

Guzman's complaint also detailed text message exchanges between herself and Sorola which occurred on or about February 23, 2018, February 24, 2018, and March 1, 2018, wherein Sorola purportedly used unprofessional language. Messages from Sorola included: "Stop chi-adndo [sic]"; "Take it like a man"; "F[-]ck her"; and "F[-]ck you."

Guzman stated that, less than two weeks after allegedly sending the "F[-]ck you" text message, Sorola asked her and Moreno if he could fire them. According to Guzman, she responded by telling Sorola that he "need[ed] to be very careful because some of the things [he] do[es] could get [him] in trouble later on down the road." Guzman and Moreno then confronted Sorola about "doing favors for attorneys," "making agreements/arraignments after[-]hours," and providing a journalist, Juan Montoya, with information "no [one] else knows anything about" regarding cases.

On April 11, 2018, following an incident wherein Guzman turned away a bondsman after-hours, Guzman and Moreno were called to meet with several local judges. Guzman stated that she went into the meeting believing it was an opportunity to "explain everything that had been happening in the Magistrate Court" but was surprised to see Sorola was present. Guzman described the meeting as "hostile," and she submitted her written complaint regarding Sorola to HR later that same day.

**B.    "Letter of Reprimand"**

On July 2, 2018, the local administrative judge issued a memorandum entitled "Letter of Reprimand" addressed to the Cameron County Board of Judges, Sorola, and Guzman:

This letter is to inform [Sorola] that an investigation has been conducted and completed regarding the allegations of Sexual Harassment, Hostile Work Environment, Retaliation and Abuse of Official Capacity brought against [Sorola] by [Guzman], employee for the Magistrate Court. The Board of Judges does not condone any behavior that would constitute Sexual Harassment, Hostile Work Environment, Retaliation or Abuse of Official [sic]. . . . [T]he Board of Judges requested an investigation be conducted by [HR]. The investigation conducted by [HR] concluded that there was not sufficient evidence of a charge of Sexual Harassment. Further, [HR] concluded that there was no evidence of retaliation based on making a complaint of sexual harassment or of a hostile work environment. The Board of Judges agreed with the [HR] investigation and adopted their findings in concluding that no violation had occurred on behalf of [Sorola]. On the allegation of Abuse of Official Capacity[,] the Board of Judges also accepted the recommendation of the committee of Judges appointed by the Board of Judges in its determination that the allegations and evidence did not rise to the level of an Abuse of Official Capacity. However, the Board of Judges, by a majority vote agreed that the language used by [Sorola] in [his] communications with [Guzman] was not appropriate language to be used by a person in a supervisory capacity. As such the Board of Judges concluded that this type of behavior warranted a written reprimand [to Sorola].

**C.    "The Real Louis Sorola"**

At some unspecified point in spring of 2019, Sorola announced his judicial candidacy for the 404th District Court. On or about August 1, 2019, Sorola was removed from his magistrate judge duties,[3] and all interactions between Sorola and Guzman ceased at that time.

On February 11, 2020, the Tuesday before early voting was scheduled to commence in the primary election, Guzman posted a YouTube video titled "The [R]eal [L]ouis [S]orola by [D]ora [G]uzman" under the YouTube account "[N]ews [B]rownsville."[4]

---

[3] Sorola retained his associate judge position.

[4] Guzman does not dispute this, and the YouTube link remains active to this day. *See* news brownsville, *The real louis sorola by dora guzman*, YOUTUBE (Feb. 11, 2020), https://www.youtube.com/watch?v=N9m6CgCf93s&t=27s (last visited Jan. 25, 2022).

A video entitled, "The Real Louis Sorola by Rubi Moreno," was also posted on the same day to the same account.[5] The videos, which have approximately 2,000 and 1,500 views respectively, are the only videos uploaded on the "[N]ews [B]rownsville" account.

The following transcript of Guzman's video is in the record:

> My name is Dora Guzman and I'm the court administrator for the magistrate court. I filed a complaint against Judge Louis Sorola back in 2018—May of 2018, to be precise. A complaint which consisted of sexual harassment, intimidation, retaliation, hostile environment, and abuse of official capacity. That's what I filed with HR. And I also went as far as filing a complaint with the Texas [State] Commission on Judicial Conduct [(SCJC)].[6]

---

[5] *See* news brownsville, *The Real Louis Sorola by Rubi Moreno*, YOUTUBE (Feb. 11, 2020), https://www.youtube.com/watch?v=PQZVobhZsZE (last visited Jan. 25, 2022).

[6] In a letter by the SCJC dated August 12, 2019, Guzman was notified: "After a thorough review and investigation of the issues you raised in your complaint, the Commission voted to issue [Sorola] a private sanction, the details of which we are not authorized to disclose under Sections 33.032 and 33.033 of the Texas Government Code. . . ."

An unsigned and undated order entitled "Private Warning and Order of Additional Education," also appears in the record as an attachment to Sorola's fifth amended petition. The order, which appears on SCJC letterhead, contained several findings of fact and conclusions of law, including the following:

> Over the course of several months, Judge Sorola sent multiple text messages to court personnel containing inappropriate and offensive language. . . .

> In his written responses to the Commission, Judge Sorola stated that although the messages "were meant in jest," he acknowledged that this language was "improper and should not be used." He explained that he developed a bad habit of using profanity in the military, but that he has since corrected that behavior and no longer uses obscene language.

> . . . .

> The Commission concludes that Judge Sorola failed to treat court personnel with patience, dignity[,] and courtesy by sending several text messages containing inappropriate and offensive language. The Commission concludes that Judge Sorola's conduct, as described above, constituted willful and/or persistent violations of Canon 38(4) of the Texas Code of Judicial Conduct.

> In view of the conduct described above that violated Canon 3B(4) of the Texas Code of Judicial Conduct, it is the Commission's decision to issue a PRIVATE WARNING AND ORDER OF ADDITIONAL EDUCATION to the Honorable Louis S. Sorola, Associate Judge for the Magistrate Court, Brownsville, Cameron County, Texas.

> . . . . In particular, the Commission desires that Judge Sorola receive this additional education in the areas of sensitivity, decorum, and professionalism.

My complaint came aboard, as I said, in the early—in the late May 2018, due to the fact that Judge Sorola started doing things that he should not have been doing. He abused his official capacity as a judge by intimidation. He did things that were of nature to us [sic] as sexual harassment. He—we started working in a hostile environment. It was not a safe environment for us to work there. Every day we came to work, it was like if we were stepping on eggshells.

He considered us insubordinate because we were not doing things that he wanted us to do that were, in our eyes and the years of experience that I've worked there, illegal and should not have been performed. We also—he did [sic] double standard with other employees that were able to do the things that he wanted without any questioning.

To put it in very few words, Associate Judge Louis Sorola should have never been placed in that position. According to him, in his own words, this was a favor that was done to him by Commissioner Sofia Benavides, Elia Cornejo-Lopez, and Migdalia Lopez. According to him, in his own words, this position was already in place[;] it was just a matter of them having to present the position and go through the legalities of him getting the position.

He should not be a judge. He is not judge material. He is a big liability to the county. He does things that should not be done, which, in turn should—we —would be considered illegal. He is a liability not only to the county, to the courts, but also to the community because the things that he does are things that should not have—should not be done. And if the community were to find out the kind of things he does, they would not be voting for him. This is not a judge the community would want sitting at the bench.

Judge Sorola has violated a lot of the Texas Ethic[s] Commission rules, a lot of the can[]ons. He has done a lot of things to serve himself at the bench for, in turn, to get votes, and he's done a lot of favors for many attorneys, many bondsmen, a lot of the public, and—and, therefore, he is just a liability for the community[,] and he should not be a judge.

So—because we find ourself [sic] in a world of retaliation, we need to—we need to stand together and we need to voice our voice. We need to stop allowing these people to step all over us and to step all over what we stand for. These things cannot be happening. The only reason they're happening is because we ourselves are allowing it. If we don't raise an issue right now, it will be a disaster and he will become a liability to our community. Thank you.

The following is the transcript of Moreno's YouTube video statement:

While being the magistrate judge, he did harass us a lot stating, you know, ["]I am the judge and who is going to believe you. No—you're just the court clerk. And I'm here because my mother-in-law Sofia Benavide[s] is the one that helped me get this position and my wife, Judge Mary Esther Sorola[,] and I am the judge.["] That—he would always tell us constantly.

I worked with Judge Louis Sorola from October 1, 2017[,] to October—June 6, 2018. I had been working in the magistrate court since 2015. So I was already a court clerk when Judge Louis Sorola came into the position.

I resigned from my position because Judge Louis Sorola was a very hostile person to work with. I loved my job. I—I would wake up. I would get there early. I would—I was the type of person that would get there an hour to thirty minutes before my job—my job started so that I can be there at my job because it is what I love to do. But after he started harassing us and creating a very hostile work environment, I didn't want to be there. I would cry to go to work because I did not want to be with a person who kept being hostile to us, and always telling me, ["I]f you don't do this, you're gonna get fired. If you don't do that, you're gonna get fired. Who's going to believe you? Me, that I'm the Judge, or you, that you are just the court clerk?["]

I did bring this complaint. And I have here to show you where I resigned in 2018. And what it says [sic] and I would like to say what it says.

It's[7]:

> To whom it may concern. Dated May 25, 2018. This letter is to inform you that May 25, 2018, is the first day of my two weeks['] notice which means June 7, 2018, will be my last day as a Court clerk in the magistrate court. I will continue to work at my 150 percent until my last day. I am resigning from my position due to the constant harassment and hostility that I had received from Judge Sorola. I can no longer work in an unsafe and hostile environment where I have been constantly threatened that I will lose my job for making Judge Sorola aware of my concerns.
>
> I can no longer work in a place where my safety is at risk due to the decisions that Judge Sorola has made. I know these issues are currently being investigated. However, it is very difficult to show up to work and feel like I'm walking on eggshells. Just know that—just knowing that Judge Sorola is looking for any little excuse to make good on his threat and fire me. I love my job. And I enjoy doing any

---

[7] At this point in the video, a document with a stamp indicating it was "Received" by the "Human Resources Dept." on May 25, 2018, was shown.

7

job to the best of my ability. But the harassment and hostility is mentally exhausting and it has affected me mentally, physically, my family, and most of all it affected my health.

In the future, if Judge Sorola is removed from his post, and—and/or changes are made to the work environment and security issues are corrected, I would like to be considered to work once again in the magistrate court as a court clerk.

I thank [Guzman] for giving me the opportunity in working with her in the magistrate court. It was a pleasure and a huge learning experience.

I still stand by my concerns that I have filed with human resource[s].[8] And if needed I will answer and further assist the ongoing investigation to stop the abuse of official capacity that the magistrate court goes through on a daily basis by Judge Sorola.

I am providing my resignation letter to [HR] due to Judge Sorola not being an approachable person, and the fear that the situation may escalate. I will also provide a copy to my immediate supervisor, [Guzman], so that she may place it in my file.

Judge Sorola should not be a judge because he does not have the mentality to be a judge. He doesn't know the law. He makes things as he goes. He thinks that what he says[,] because he's a judge[,] they have to be done and that is not the proper way[,] and even though we kept telling him and trying to protect him [sic] not to do the right—to do the wrong thing, he still constantly wanted to do the wrong thing.

I would like to let everyone and make everyone aware that are currently working with him and I'm sure a lot of people don't voice their opinion because I—I lived it myself. I was afraid to make my opinion and voice my concern. So speak out. Let people know the type of person that he is, because if not, everybody—more people are going to go through this and it's not fair for any of us to have to deal with this type of situation. And if you have any complaints, make it anonymous if you need to. Thank you.

---

[8] The record does not contain a copy of an HR complaint by Moreno.

**D.    Sorola's Lawsuit**

On November 30, 2020, Sorola filed his original petition against Guzman, asserting defamation per se, intentional infliction of emotional distress, and tortious interference with past, current, and prospective business relationships. Guzman timely filed her original answer,[9] and on December 30, 2020, she filed a motion to dismiss Sorola's petition pursuant to the TCPA. *See id.* Guzman argued that Sorola was a public figure, that her speech involved matters of public concern, and that Sorola had failed to establish a prima facie case for each element of his defamation claim.[10] As evidence, she attached an affidavit[11] and a copy of a letter she received from the SCJC detailed *infra*.

Sorola filed several amended petitions in January and February 2021, adding Hernandez, Moreno, Evaristo "Viro" Cardenas, Erin Hernandez Garcia, John Doe, and Jane Doe as co-defendants. On January 25, 2021, Hernandez filed a TCPA motion to dismiss. The trial court scheduled a hearing on Guzman's and Hernandez's motions on February 24, 2021, but on the day of the hearing, the trial court granted appellants' joint unopposed motion for continuance.

---

[9] Guzman asserted the affirmative defense of "qualified privilege" in her original answer and all amended answers thereafter. However, no assertion of this or any other affirmative defense exists in appellants' TCPA motion to dismiss or appellate brief. *See Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) ("[T]he defendant bears the burden of proving privileged publication unless the plaintiff's petition affirmatively demonstrates privilege. . . .").

[10] Although Guzman requested that the trial court "dismiss [Sorola's] Petition with Prejudice," no reference or argument was made regarding any of Sorola's other live claims.

[11] Guzman's affidavit reiterated allegations made in her complaint to HR and made reference to both the HR complaint and her report to the SCJC. Guzman maintained that Sorola's use of profanity "constituted workplace sexual harassment and a hostile work environment," and that her statements made in the YouTube video were "the truth of what [she] had witnessed and experienced working for Judge Louis Sorola."

9

Sorola amended his petition for a fifth and final time on March 9, 2021, and he filed a second response to Guzman's and Hernandez's motions to dismiss the following day. Although Moreno had not yet filed her TCPA motion to dismiss, Sorola's response to Guzman's and Hernandez's TCPA motions to dismiss addressed all named defendants. Sorola specifically outlined fifteen statements[12] by Guzman and thirteen statements by Moreno which he argued were individually and collectively defamatory per se. Principally, Sorola asserted the statements in both YouTube videos concerned matters of which he had been "exonerated," and appellants had acted with actual malice because they were aware of his "exoneration" and nonetheless conspired to disseminate false information with the intent of interfering with his election bid. Sorola additionally questioned the trustworthiness of the appellants, claiming that Moreno and Guzman had filed "fraudulent affidavits" to avoid paying court costs in unrelated causes. Sorola further alleged that Guzman's "deception" extended to "tak[ing] from Cameron County by adjusting her timecards" to approve unauthorized overtime for herself.

Regarding Hernandez, Sorola argued that Hernandez had "no doubt" read the 2018 Letter of Reprimand and had "actual knowledge that Sorola was exonerated of sexual harassment, intimidation, retaliation, hostile work environment, and abuse of official capacity" when she "became a republisher" by texting the YouTube video link to her telephone contacts.

In support of his claim that the appellants published their statements with actual malice, Sorola further asserted that he had "a sordid history" with the appellants. Sorola

_____

[12] Sorola lists seventeen statements, two of which are repeated.

10

represented Guzman's ex-husband in divorce proceedings over a decade ago. At some unspecified point prior to this suit, Sorola filed a lawsuit against Hernandez's daughter, co-defendant Garcia, when Garcia was a sitting justice of the peace. Sorola stated that Garcia was also later "defeated in her bid for re-election" by a candidate Sorola supported.

Sorola included over fifty exhibits[13] in his response to the appellants' TCPA motion to dismiss, including his affidavit which read in pertinent part:

> I first met [Guzman] when I was retained to represent her in a [suit affecting the parent-child relationship] in [t]he year 2000. 10 years subsequently I was appointed to represent her ex-husband, Conrado Vega, . . . who was served with a motion for lifetime child support in Cause No. 1997-02-481. At the time, [Guzman] was a clerk at the Cameron County Magistrate Court. At the time, I had the defense attorney contract with Associate Judge Gilberto Rosas of the IV-D Court, and I represented Mr. Vega as his appointed indigent counsel appointed by the Court. . . . We defeated [Guzman's] motion for lifetime child support as their son was graduating

[13] Exhibits included:

- An affidavit by a local attorney, Yolanda de Leon, who addressed the appellants' allegations that Sorola had engaged in criminal acts or conduct, attesting that "profanity is not an element of any chargeable criminal offense";

- An affidavit by Montoya, who stated that it was his "professional and expert opinion" as a journalist of forty-five years that: (1) "Guzman engaged in Actual Malice against Louis Sorola because she intentionally and deliberately failed to accurately represent the facts to the public regarding Louis Sorola"; (2) "there is no question that Louis Soral [sic] was exonerated and cleared of any wrongdoing"; and (3) "all legitimate news media outlets would have rejected the Dora Guzman video titled 'The Real Louis Sorola' in the interest of fair play because a quick fact check, and the exercise of due diligence would have found that the statements were false and contradicted by the record";

- An affidavit from Sorola's ex-wife, Maria Antonia Lopez, who described the effect she observed that the videos had on Sorola: "Louis had headaches, he was manic, he could not sleep, he threw up, his hands were shaky, he looked lost, worried, and he was fearful." Lopez also stated that when Sorola "lost his job" in March 2020, "he stopped paying child support regularly" although he had previously always paid on time. Lopez "blame[d] the videos of Dora Guzman and Rubi Moreno because they destroyed his personal and business reputation"; and

- An affidavit by attorney David Zipp, who stated that he was approached by Guzman and Moreno while waiting for magistrate court to begin, and "one or both of them took their cellular telephones and played the [YouTube] video" for him and another attorney.

11

high school[,] and he was found by the Court to be able to manage his own affairs. . . . Having lost her [m]otion for lifetime child support, [Guzman], proceeded to file a [g]uardianship case with the Cameron County Courts at Law and attempted to have the Judge order financial support for her son. This time Mr. Vega retained me and paid me to represent him in the [g]uardianship case. [Guzman] was furious. A few days later, Mr. Kevin Saenz, told me that [Guzman] had approached the Cameron County Indigent Defense Department to complain that I should not be allowed to double dip. [Guzman] said that I should not be allowed to have the contract with Judge Gilberto Rosas the child support Associate Judge and also be on the [w]heel in the Indigent Defense list. Solely because I represented her ex-husband against her, [Guzman] wanted me removed from the list of attorneys who are appointed as Indigent Counsel. [Guzman] wanted to injure me financially, to injure my earning capacity simply because I did my job and represented her ex-husband who qualified for indigent representation. [Guzman's] effort to injure me by having me removed from the [w]heel failed . . . .

Seventeen years later, I was unanimously hired by the Cameron County Board of Judges as an Associate District Court Judge and Magistrate Court Judge. . . . My first day at the Magistrate Court, I realized that I had to work with [Guzman] who was now the Court Administrator of the Magistrate Court. . . . I thought I was on a good foot with [Guzman]. On occasion, I would buy breakfast or lunch for the entire staff at my personal expense. I ate with the staff. On one occasion, I also gave [Guzman] $100.00 to buy snacks at Sam's for the office. I treated my staff with respect, and I feel that I was kind and generous with them, and specifically with [Guzman].

As an attorney licensed by the State of Texas, I do not feel that I should have to attest to the fact that I have never had a criminal information and complaint filed against me, which is required for a misdemeanor charge, and I have never had an indictment issued by a grand jury against me, Louis Sorola. I have not been indicted nor convicted of Abuse of Official Capacity for my judicial duties from October 1, 2017[,] through March 31, 2020. I swear and attest that while the Associate and Magistrate Judge[,] I did not perform illegal acts as alleged by [Guzman] in her YouTube video titled "The Real Louis Sorola". I have not been charged nor convicted of any crime of moral turpitude. [Guzman] filed complaints against me alleging and accusing me of Sexual Harassment, Hostile Work Environment, Retaliation by Intimidation, and Abuse of Official Capacity. On or about July 2, 2018, I received a letter from the Board of Judges in which the Board of Judges advised me that [HR] had found that there was not sufficient evidence to make any findings of Sexual Harassment, Hostile Work Environment, Retaliation by Intimidation, and Abuse of Official Capacity which were the allegations and accusations by [Guzman]. I had been exonerated by the

12

[HR] investigation, the Cameron County Civil Division, and the Board of Judges. In August of 2019, I was relieved of my Magistrate duties[,] and I no longer saw or worked with [Guzman]. After August 2019, since I no longer worked with [Guzman,] I could not have engaged in any sexual harassment, Hostile Work Environment, Retaliation, and Abuse of Official Capacity. Thus, I believed this to be the end of this matter.

I used the "F" word one time, one day, when I offered to buy breakfast, at my personal expense, for [Guzman], [Moreno], and [Enrique] Rosas, in essence the entire Magistrate Court staff. I was at Stripe's and after I had placed the order, [Guzman] reminded me of the orange juice for [Moreno] via text. When [Guzman] texted me about [Moreno's] orange juice, I joked "F" [Moreno]. When I arrived at the office with breakfast, including [Moreno's] orange juice, we all sat together and ate. [Moreno] and [Guzman] both appeared to be happy, we ate, we laughed, we talked, they were both fine with me. I did not feel that either of the two of them were upset by my comment of "F Rubi" when she placed her orange juice order late. Neither [Guzman] nor [Moreno] told me that my joke of "F Rubi" bother[ed] them in anyway. [Guzman] saved the text message containing the "F Rubi" text from me for many months to use it against me. . . .

I understood the Board of Judges written reprimand [sic] issued for my use of the "F" word. However, I also understood that the reprimand was a directive that I refrain from using the F word at work[,] and I obeyed the directive as issued. I never ever used the F word in text or word after July 2, 2018, the date of the letter. I also understood that the written reprimand was only and solely for the use of the "F" word. . . . The letter clearly reads that the written reprimand is only and solely for the use of foul language and not for any of [Guzman's] other accusations, complaints, and allegations of sexual harassment, etc. Thus, when [Guzman's] video titled "The Real Louis Sorola" was posted[,] I was caught off guard and devastated because it was contrary to the truth[.] [Guzman] misrepresented the findings of [HR], and the Board of Judges to the public under a false allegation of public concern, with Actual Malice and/or a reckless disregard for the truth.

. . . .

In the Spring of 2019, I announced my candidacy for the 404th District Court. [Guzman] admits that she waited 18 months to release the video, on the Wednesday [sic] before early voting and election day to affect my changes [sic] to be elected Judge of the 404th District Court. [Guzman] did so for the sole purpose of causing me financial injury and affect my earning capacity, ruin, and blacken my reputation, causing me public hatred, contempt, and ridicule, and to impeach my honesty, and integrity with lies, and false statements with Actual Malice because she knew and had actual

13

knowledge that her statements were false, and [Guzman] did not give the true and full picture of the facts, and she misrepresented the facts to the public. I was heartbroken, distressed, embarrassed, and shamed when my 14-year-old daughter, [A.S.], told me that the students and teachers were talking at school that I was a sexual harasser and a criminal. That her father, Louis Sorola, is a sexual harasser and a criminal. [A.S.] (my Daughter) said to me, "Daddy why are people saying that you sexually harassed the women you work with, your secretary, your court administrator is saying that you sexually harassed her?" My daughter's mother contacted me about the video and her concerns concerning the false statements and the harm it would cause me and my daughter.

I could not sleep, I threw up, I got headaches, stomachaches, and I became anxious, suffered from major depressive disorder, frustration, insomnia, and I had many physical ailments. I had to seek medical attention.

I had people tell me that they were going to vote for me but could no longer do so because of the [Guzman] video. I saw my political support vanish after the video link was texted to the registered voters February 12, 2020[,] through March 4, 2020[,] every day, every hour, almost every minute. When we are allowed to begin discovery the telephone records of the defendant(s) will reveal the number of text messages were sent the link to the video titled "The Real Louis Sorola". . . . My reputation, self-esteem, and spirit were in the ground from having lost the election for which I was the front runner due to [Guzman's] video "The Real Louis Sorola" which is full of falsity and losing my job. My earning capacity and personal and professional reputation was harmed, and I was forced to try and practice law with my personal or professional reputation destroyed.

I tried to respond to the video, and I placed an ad in the Brownsville Herald and the Valley Morning Star at a cost [of] several thousand dollars.

To this day, my earning capacity and personal and professional reputation is suffering as the video is still on YouTube[,] and who wants to hire an attorney that engages in the performance of illegal acts? The damage to my reputation and law practice will continue into the future for years to come. . . .

On March 23, 2021, Guzman, Moreno, and Hernandez filed a joint "Second Supplemental Motion to Dismiss, For Sanctions, Severance and Supporting Memorandum of Points and Authorities." The motion reiterated how Sorola had failed to plead or prove each prima facie element of his defamation claim, reasserted that the

statements made in the video had a factual basis, and maintained that "[t]he fact that both the Cameron County Board of Judges and the [SCJC] disciplined Sorola as a result of [Guzman's] complaint support, rather than diminish, their claims."

Sorola did not file a response to appellants' supplemental motion, and on April 7, 2021, the trial court held a hearing on appellants' motion to dismiss. Appellants' motion was thereafter denied by operation of law.[14] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(a) (providing that trial court must rule on motion "not later than the 30th day following the date of the hearing on the motion"); *id.* § 27.008(a) ("If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal."). This appeal followed. *See id.* §§ 27.008(b); 51.014(12).

By four issues, which we construe as three, appellants assert that the trial court erred in failing to grant their TCPA motion to dismiss because Sorola's (1) defamation, (2) business disparagement, and (3) intentional infliction of emotional distress claims fall under the TCPA, and Sorola failed to establish a prima facie case for each essential element of each claim.

## II.    WAIVER AND PRESERVATION

Sorola asserts that appellants waived or failed to preserve the issues on appeal.

### A.    Inadequate Briefing

We first address Sorola's argument that appellants waived all issues on appeal due to inadequate briefing because: (1) "Appellants cite the Texas Public Participation

---

[14] The trial court issued an untimely order denying appellants' TCPA motion to dismiss on May 24, 2021.

Act which does not exist"; and (2) in their analysis, "Appellants use a standard that does not exist in any rule, regulation, statute, case law, and for which there is no precedent[:] *'by clear and substantial evidence'*." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (requiring the nonmovant to "establish[] by *clear and specific evidence* a prima facie case for each essential element of the claim in question" following the movant's showing of TCPA applicability) (emphasis added).

Although appellants' brief makes frequent mention of the "Texas Public Participation Act," appellants also correctly reference the applicable "Texas Citizens Participation Act" and cite to the appropriate statutory provisions under the Texas Civil Practice and Remedies Code throughout. *See id.* We disagree with Sorola's assertion that this amounts to inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain . . . appropriate citations to authorities and to the record."); *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (per curiam) (instructing appellate courts to construe the rules of appellate procedure liberally).

With respect to appellants' erroneous restatement[15] of the TCPA standard of the quantum of evidence necessary for a nonmovant to successfully establish "a prima facie case for each essential element of the claim in question," we are similarly disinclined to find waiver due to briefing error. *See* TEX. R. APP. P. 38.1(i); *Lion Copolymer Holdings*, 614 S.W.3d at 732; *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896–97 (Tex. 2018) (cautioning appellate courts against applying overly restrictive error preservation rules in a TCPA dismissal proceeding); *see also Guevara v. Gamboa*, No.

---

[15] Appellants' brief uses the correct language once.

16

13-20-00023-CV, 2021 WL 727383, at *2 n.2 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, no pet.) (mem. op.) (addressing appellant's argument "out of an abundance of caution" although appellant's brief lacked a "clear and concise argument" and "appropriate citations to authorities and to the record"). Accordingly, we conclude appellants' issues have not been waived due to inadequate briefing.

## B.     Preservation

Sorola additionally contends that appellants did not preserve issues two and three, which respectively seek to dismiss Sorola's business disparagement and intentional inflection of emotional distress claims under the TCPA. For reasons set forth below, we agree.

However liberally we must construe appellate issues, we cannot "consider issues that were not raised . . . below." *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (quoting *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014)); *see, e.g.*, *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 614 (Tex. App.—San Antonio 2018, pet. denied) (concluding appellants failed to preserve for appellate review their argument that the TCPA applied to plaintiff's civil conspiracy claim where appellants failed to raise the issue in the trial court); *see also* TEX. R. APP. P. 33.1(a)(1).

Appellants' motions to dismiss concern only Sorola's defamation claim. None of appellants' three motions to dismiss makes any mention—either in substance or name—of Sorola's business disparagement and intentional infliction of emotion distress claims. *See Li*, 631 S.W.3d at 704; *see also St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020) (per curiam) ("We have often held that a party sufficiently preserves an issue for review by arguing the issue's substance, even if the party does not

17

call the issue by name."); *see generally In re Lipsky*, 460 S.W.3d 579, 591 (Tex. 2015) (orig. proceeding) (noting the different interests served by business disparagement and defamation torts and the different elements each comprise of). The reporter's record is equally silent regarding Sorola's business disparagement and intentional infliction of emotion distress claims. *Cf. Adams*, 547 S.W.3d at 896 (concluding the court of appeals had improperly decided that the defendant failed to preserve arguments on appeal in a TCPA case where appellant "expressly mentioned these concerns at the hearing on the motion to dismiss").

Before the trial court, appellants exclusively sought TCPA dismissal of Sorola's defamation claim. Therefore, we conclude appellants have failed to preserve for appeal their complaints concerning Sorola's business disparagement and intentional infliction of emotion distress claims. *See* Tex. R. App. P. 33.1(a)(1); *Li*, 631 S.W.3d at 704. We overrule appellants' second and third issues and proceed to address appellants' remaining issue on appeal.

### III.  TCPA Framework

By their first issue, appellants argue Sorola's defamation claim falls under the TCPA, and Sorola failed to establish a prima facie case for each essential element of defamation; therefore, the trial court erred in denying appellants' TCPA motion to dismiss.

"The TCPA's purpose is to safeguard 'the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law' without impairing a person's right 'to file meritorious lawsuits for demonstrable injury.'" *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 847 (Tex. 2021) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.002); *In re*

18

*Lipsky*, 460 S.W.3d at 589. Under the TCPA, a defendant may move to dismiss a suit if it "is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019). The defendant must show by a preponderance of the evidence that the conduct that forms the basis of the claim against it is protected by the TCPA—that is to say, that the suit is based on, relates to, or is in response to the defendant exercising her right to free speech, petition, or association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). Whether a legal action is based on, related to, or in response to the exercise of a protected right is determined by the court's consideration of the claims made in the nonmovant's petition, pleadings, and affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

If the defendant meets this burden, then the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Montelongo v. Abrea*, 622 S.W.3d 290, 301 (Tex. 2021). "Clear" means "unambiguous, sure, or free from doubt," and "specific" means "explicit or relating to a particular named thing." *In re Lipsky*, 460 S.W.3d at 590 (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)) (cleaned up). A "prima facie case" is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam)). The "clear and specific evidence"

requirement requires more than mere notice pleading. *Id.* at 590–91. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* Dismissal of the case is required if the plaintiff fails to meet its burden or, alternately, if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense to the [plaintiff's] claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *Lona Hills Ranch*, 591 S.W.3d at 132.

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). We consider evidence favorable to the nonmovant in determining whether he met his burden of establishing a prima facie case under the TCPA. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 440 n.9 (Tex. 2017) (refusing to consider TCPA movant's rebuttal evidence in determining whether nonmovant established prima facie case, stating that although movant "disputes [nonmovant's factual assertion] . . . at this stage of the proceedings[,] we assume its truth").

## IV. TCPA APPLICABILITY

In their joint TCPA motion to dismiss, appellants argued that Sorola's defamation per se claim—which alleges appellants made libelous and slanderous statements against him—is based on, related to, or in response to their right to free speech. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).

Sorola does not appear to dispute that appellants satisfied their initial burden to show that his defamation action is subject to the TCPA. *See Hall*, 579 S.W.3d at 377 (assuming TCPA applied where the plaintiff did not dispute its application). Instead, Sorola asserts that appellants' speech was actionable in its falsity. *See* TEX. CIV. PRAC. &

20

REM. CODE ANN. § 27.005(c); *see also Amini v. Spicewood Springs Animal Hosp., LLC*, No. 03-18-00272-CV, 2019 WL 5793115, at *6 (Tex. App.—Austin Nov. 7, 2019, no pet.) (mem. op.) ("[I]n the context of the first step of our TCPA analysis, asking whether the TCPA applies in the first place, we do not consider whether the communications were defamatory, harassing, or otherwise actionable."). Therefore, the burden shifted to Sorola to establish by clear and specific evidence a prima facie case for each essential element of his defamation claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Hall*, 579 S.W.3d at 377.

## V.    CLEAR AND SPECIFIC EVIDENCE

To overcome his burden as the nonmovant in a TCPA dismissal on a defamation per se claim, Sorola must have shown that (1) appellants publicized a false statement of fact to a third party, (2) the statement was defamatory per se concerning him, and (3) the statement was made with actual malice. *See Hall*, 579 S.W.3d at 377; *In re Lipsky*, 460 S.W.3d at 593.

## A.    Defamation

Defamation is a tort that may occur through oral (slander) or written or graphic (libel) form. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623–24 (Tex. 2018); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (defining libel as "defamation expressed in written or other graphic form that tends to . . . injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation."). The elements of defamation "include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and

21

(4) damages, in some cases." *In re Lipsky*, 460 S.W.3d at 593. "Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise." *TV Azteca, S.A.B. de C.V. v. Trevino Ruiz*, 611 S.W.3d 24, 29 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.) (quoting *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied)); *see also Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 791 (Tex. 2019) (concluding that the court of appeals had correctly considered the newspaper defendant's twenty articles together, rather than as separate and distinct publications, for purposes of determining the existence of a defamatory meaning); *Bentley v. Bunton*, 94 S.W.3d 561, 585 (Tex. 2002) (treating multiple statements made by a host and recurring guest of a call-in talk show over a nearly eight-month span as a single publication its defamatory analysis).

A statement does not give rise to liability if it is either "not verifiable as false," or even if verifiable as false, "the 'entire context in which it was made' discloses that it is merely an opinion masquerading as a fact." *Tatum*, 554 S.W.3d at 624; *see In re Lubbock*, 624 S.W.3d 506, 515 (Tex. 2021) (orig. proceeding) ("[T]rue statements cannot form the basis of a defamation complaint." (quoting *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 855 (Tex. App.—Dallas 2003, no pet.))). The "requisite degree of fault" element turns on whether the person allegedly defamed is a private individual or a public figure. *In re Lipsky*, 460 S.W.3d at 593. As relevant here, where the plaintiff is undisputedly a public figure, it must be shown that the defendant's statements were made with actual malice. *Id.* "'Actual malice' in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth." *Id.* The actual malice element is "relatively demanding" and "honors our 'profound national commitment to the principle that debate

22

on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks' on public figures." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Texas common law further distinguishes defamation claims as either per se, as alleged here, or per quod. *Id.* at 596. Whether a statement is defamatory per se is generally a question of law. *Id.* Examples of defamation per se include "[a]ccusing someone of a crime, . . . or of engaging in serious sexual misconduct," and adversely remarking on an individual's "fitness to conduct his or her business." *Id.* "When defamation is per se, the communication is actionable in and of itself without proof of actual damages." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020).

## B.    Guzman's and Moreno's Statements

### 1.    Defamatory Meaning

Guzman and Moreno concede they created and published the YouTube videos at issue. As a threshold matter, we must determine whether the statements made by Guzman and Moreno in their YouTube videos were "reasonably capable of a defamatory meaning." *Tatum*, 554 S.W.3d at 634 ("[N]o court can decide whether a statement is verifiable until the court decides what the statement *is*—that is, until it conducts an inquiry into the publication's meaning."). "If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails." *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013); *Entravision Comm'cn. Corp. v. Salinas*, 487 S.W.3d 276, 284 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied).

23

We construe the statements "as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Carter*, 573 S.W.3d at 795 (quoting *Rosenthal*, 529 S.W.3d at 434). In other words, we must ascertain the "gist" of the statements. *Tatum*, 554 S.W.3d at 628–29 (concluding that the "meaning" of a statement in a textual-defamation case "may arise implicitly as a result of the [statement's] entire gist," and "'[g]ist' refers to a publication or broadcast's main theme, central idea, thesis, or essence").

Sorola's live pleading enumerates specific statements made by Guzman and Moreno which he alleges were individually and collectively defamatory per se. Sorola additionally argues that written statements, which appear on screen in both videos, were defamatory. Guzman's YouTube video begins with Guzman's oral pronouncement that she reported Sorola for "sexual harassment, intimidation, retaliation, hostile environment, and abuse of official capacity" in 2018. The "accusations" are set forth in bold, blue lettering overlaid on the screen, and Guzman reiterates the accusations with varying language throughout the three-and-a-half-minute video. Though Guzman provided no specific examples in substantiation of her allegations and does not specify the "things that [Sorola] should not have . . . done," the allegations presented carry potential criminal implications; Guzman's statements were also explicitly aimed at Sorola's fitness as a judge. *See Tatum*, 554 S.W.3d at 638 (explaining that "[a]ccusing someone of a crime" or making "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se" (quoting *In re Lipsky*, 460 S.W.3d at 596)); *Greer v. Abraham*, 489 S.W.3d 440, 447 (Tex. 2016) (noting that, for purposes of a defamation analysis, "a charge of criminal conduct, no matter how remote in time or

24

place, can never be irrelevant to an official's or a candidate's fitness for office" (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277 (1971)); *Hancock*, 400 S.W.3d at 64 ("A statement that injures a person in her office, profession, or occupation is typically classified as defamatory *per se*."); *see also* TEX. PENAL CODE ANN. §§ 39.02 (abuse of official capacity); 39.03 (official oppression). The video ends with a blurry image of the 2018 Letter of Reprimand with the following words superimposed over the image: "OFFICIAL LETTER OF WRITTEN REPRIMAND FOR SOROLA BY MAJORITY VOTE OF THE CAMERON COUNTY DISTRICT JUDGES."

Moreno, in her YouTube video, discussed her own allegations that Sorola "harassed" her and created a "hostile work environment" while he was a judge. *See Tatum*, 554 S.W.3d at 638. Moreno further questioned Sorola's mental fitness as a judge and referenced the 2018 "abuse of official capacity" investigation briefly while reading aloud her 2018 letter of resignation. *See Greer*, 489 S.W.3d at 447; *see also Belcher v. King*, No. 03-19-00222-CV, 2020 WL 4726593, at *5 (Tex. App.—Austin July 30, 2020, pet. denied) (mem. op.) (concluding that defendants' accusations that the plaintiffs lied "in the context of their positions," paid off a trial court judge, broke fair housing laws, and "'impos[ed] [their] will on' the people" was defamatory per se). The following phrases also temporarily appeared on screen in bold, red font: "Constant harassment and hostility by Sorola," "Unsafe and hostile environment," "Sorola Investigated," "Sorola banned from Magistrate Court and Carrizales Jail," and "ABUSE OF OFFICIAL CAPACITY." Moreno additionally noted that after resigning while "these issues [were] being . . . investigated," and conditioning her return to the office "if Judge Sorola [was] removed from his post, and—and/or changes [were] made to the work environment and security issues [were]

25

corrected," she was "rehired soon thereafter." Moreno makes no mention of the 2018 Letter of Reprimand.

The "gist" of the statements is unequivocal: Sorola engaged in and was investigated for criminal conduct while an acting magistrate judge, and the results of the investigation were unfavorable to Sorola. *See Tatum*, 554 S.W.3d at 638. We conclude that a person of ordinary intelligence, exercising care and prudence, would perceive the gist of the statements as reasonably capable of a defamatory meaning. *See id.*

### 2. Falsity

The second element required Sorola to produce evidence that the statements defamed him in their falsity. *See Tatum*, 554 S.W.3d at 634; *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 116 (Tex. 2000) (observing the requirement that a public figure must provide evidence of falsity to succeed in a defamation suit).

Guzman and Moreno maintain that their statements are verifiably true and alternatively, nonactionable political hyperbole or opinion because they were based on their perceptions of their experiences—they "felt harassed, retaliated against, or sexually harassed, that Sorola had abused process as their employer." *See Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.) ("A statement must assert an objectively verifiable fact, rather than an opinion, to be actionable."). However, "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990); *Tatum*, 554 S.W.3d at 634 ("Publishers cannot avoid liability for defamatory statements simply by couching their implications within a subjective opinion."); *see Bentley*, 94 S.W.3d at 582 (reiterating its previous holding that "detailed accusations of corruption against a public official are not protected opinion").

26

Even though some of Guzman's and Moreno's statements, in isolation, may be construed as statements of opinion, many of the statements that contribute to the defamatory gist of YouTube videos are verifiable statements of fact which, if true, carry potential criminal ramifications. *See Campbell*, 471 S.W.3d at 625 ("[A]n opinion, like any other statement, can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified." (quoting *Avila v. Larrea*, 394 S.W.3d 646, 658 (Tex. App.—Dallas 2012, pet. denied))); *see also Schofield v. Gerda*, No. 02-15-00326-CV, 2017 WL 2180708, at *24 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.) (concluding that defamatory statements were not inherently improbable simply because of the severity of the allegations posed; "[u]nfortunately, incidences of cronyism—even to the level of bribery and kickbacks—are not only possible, plausible, and conceivable, but in some cases, they are also provable beyond a reasonable doubt").

Moreover, Guzman's insinuation that *all* of her allegations of Sorola's illicit conduct had documented substantiation in the form of a written reprimand from the board of judges cannot be said to be opinion—rather, whether such a wide-ranging reprimand occurred is a matter of verifiable fact. *See Carter*, 573 S.W.3d at 795; *Campbell*, 471 S.W.3d at 625; *see also Turner*, 38 S.W.3d at 115 ("[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way."). Having reviewed the 2018 Letter of Reprimand, we conclude that it does not verify as fact Guzman's allegations of sexual harassment, intimidation, retaliation, hostile environment, and abuse of official capacity as Guzman implies in her YouTube video. *See Turner*, 38 S.W.3d at 118. Moreno's suggestion that

27

the 2018 investigation outcome was wholly unfavorable to Sorola is similarly verifiable and misleading. *See id.*; *Campbell*, 471 S.W.3d at 625.

Additionally, Sorola additionally challenged the veracity of the YouTube videos via his written affidavit and pleadings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006; *Hersh*, 526 S.W.3d at 467. Sorola maintained his "innocence" and explicitly denied performing any of the "illegal acts as alleged." Because, at its core, this is a case of she said/he said, in which one party claims events have occurred and the other denies the allegations, Sorola's affidavit denying appellants' allegations satisfies his burden with respect to the falsity element at this preliminary stage. *See Rosenthal*, 529 S.W.3d at 440 n.9; *Rodriguez v. Gonzales*, 566 S.W.3d 844, 854 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (concluding the plaintiff's affidavit denying a co-defendant's allegations provided sufficient evidence of falsity to survive a TCPA motion to dismiss); *Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied) (same); *see also Belcher*, 2020 WL 4726593, at *5 (same); *see generally Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *10 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.) (same and observing the difficulties presented in analyzing the sufficiency of prima facie proof in a "she said/she said" TCPA motion to dismiss).

### 3. Actual Malice

The remaining element concerns fault. *See Hall*, 579 S.W.3d at 377. "To establish actual malice, a plaintiff must prove that the defendant made the statement with knowledge that it was false or with reckless disregard of whether it was true or not." *Scripps NP Operating, LLC v. Carter*, 567 S.W.3d 1, 22 (Tex. App.—Corpus Christi–Edinburg 2016), *aff'd*, 573 S.W.3d at 781. Omission of facts may evidence actual malice

28

if a showing can be made that the defendant acted with "awareness that the omission could create a substantially false impression." *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 426 (Tex. 2000). "Actual malice," however, is not synonymous with "ill-will, spite, or evil motive," *Huckabee*, 19 S.W.3d at 420, because "actual malice concerns the defendant's attitude toward the truth, not toward the plaintiff." *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) (quoting *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004)).

Sorola put forth the following evidence of actual malice: Sorola's "sordid history" with Guzman; Guzman's and Moreno's confessed intentions behind publishing the videos; and their respective omission or misrepresentation of the "exculpatory" 2018 Letter of Reprimand in their videos. *See Bentley*, 94 S.W.3d at 596; *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 805 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020) ("[A]ctual malice may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the defendant's words or acts before, at, or after the time of the communication." (quoting *Dolcefino v. Turner*, 987 S.W.2d 100, 111–12 (Tex. App.—Houston [14th Dist.] 1998), *aff'd sub nom. Turner*, 38 S.W.3d at 120)).

Guzman and Moreno state in their respective affidavits that they published the YouTube videos because they were "opposed to Louis Sorola running for District Court Judge" and believed "the public had the right to know about Sorola's qualifications to hold political office." Guzman further acknowledges in her affidavit that her claims of sexual harassment, intimidation, retaliation, hostile environment, and abuse of official capacity were not "sustained . . . in whole" by either the 2018 Letter of Reprimand or SCJS order.

Moreno's omissions regarding the outcome of the county's investigation and Guzman's selective depiction of the 2018 Letter of Reprimand, coupled with their affidavit admissions, indicates an intent to create a false impression that Sorola faced repercussions in response to criminal accusations. *See Turner*, 38 S.W.3d at 118 (providing that statements were false and defamatory because the speaker "omitt[ed] key facts and falsely juxtapose[ed] others," and the misleading statements ultimately "cast more suspicion on [the plaintiff's] conduct than a substantially true account would have done"); *Huckabee*, 19 S.W.3d at 425–26 (concluding a defendant's selective omission of facts to purposefully create false portrayal of events was evidence of actual malice); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 578 (Tex. App.—Austin 2007, pet. denied) (same). At this stage, this is sufficient evidence of actual malice.[16] *See Carter*, 567 S.W.3d at 22; *Huckabee*, 19 S.W.3d at 425–26.

### 4. Summary

This Court recognizes that encouraging employees who believe they are suffering harassment to use internal grievance procedures is difficult enough without the threat of defamation suits that may follow should the grievances later be publicized. It is not our intent to chill "would-be critics of official conduct . . . from voicing their criticism." *See McDonald v. Smith*, 472 U.S. 479, 486–87 (1985) (Brennan, J., concurring) (quoting *Sullivan*, 376 U.S. at 279). But the legislature has decided that in certain classes of legal

---

[16] In *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015), the Texas Supreme Court observed that the "[c]lear and specific evidence" standard used in TCPA dismissal motions is "not a recognized evidentiary standard," and although similar in plain language to the "clear and convincing evidence" standard used at trial for defamation suits, "the phrases are not legally synonymous." *Id.*; *see also Bentley v. Bunton*, 94 S.W.3d 561, 603–04 (Tex. 2002) (holding that because "the actual malice standard focuses on the defendant's state of mind regarding the import of the statements actually made," the evidence of one co-defendant's actual malice was not clear and convincing at trial).

actions, lawsuits must proceed where the plaintiff clears certain necessary hurdles. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Under the limited facts of this case and at this preliminary stage, Sorola provided "the minimum quantum of evidence necessary" to survive a TCPA dismissal. *See In re Lipsky*, 460 S.W.3d at 591 ("[P]leadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss."). We observe, however, that perhaps the result would have been different had the videos simply been a recitation of previously recorded grievances and did not knowingly or recklessly imply a defamatory outcome. *See generally Sullivan*, 376 U.S. 279–80; *Turner*, 38 S.W.3d at 118.

We conclude that the trial court did not err in determining that Sorola established a prima facie case for each essential element[17] of his defamation claim as it pertains to Guzman's and Moreno's statements. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001; *Hall*, 579 S.W.3d at 377; *In re Lipsky*, 460 S.W.3d at 593. Moreover, Guzman and Moreno have not established any affirmative defense to Sorola's defamation claim; accordingly, the trial court did not err in denying their motion to dismiss the defamation claim under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

We overrule appellants' first issue in part.

---

[17] Because Sorola established a prima facie case that appellants' YouTube videos were defamatory per se, Sorola was not required to prove the fourth element of damages. *See Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 418 (Tex. 2020); *In re Lipsky*, 460 S.W.3d at 593 ("[T]he plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se.").

## C. Hernandez's Republication

Sorola further sought to hold Hernandez liable for republishing Guzman's and Moreno's defamatory statements. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 581 (Tex. 2017) ("[It is] a well-settled legal principle that one is liable for republishing the defamatory statement of another." (quoting *Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013))).

> Sorola argued in his pleadings:
>
> Hernandez repeatedly texted the video and the YouTube video link to her telephone contacts and to registered voters off the democratic van list. Sorola is in possession of a screenshot of a text message of the Guzman video sent by Hernandez to 10 persons in a group chat. At the top of the screenshot is Hernandez' cellular telephone number . . . .

A copy of the screenshot was attached to the petition. No affidavits or documents accompany the screenshot exhibit to verify the text message sender or recipient identities. However, Hernandez does not dispute in either her motion to dismiss or on appeal that she republished the YouTube videos via text message. *See Neely*, 418 S.W.3d at 61; *Hoskins v. Fuchs*, 517 S.W.3d 834, n.6 (Tex. App.—Fort Worth 2016, no pet.) ("Under Texas law, a person who repeats a defamatory statement made initially by another can be held responsible for republishing the libelous statement." (quoting *Milo v. Martin*, 311 S.W.3d 210, 214 (Tex. App.—Beaumont 2010, no pet.))); *see also* RESTATEMENT (SECOND) OF TORTS §§ 577 (what constitutes publication); 578 (liability of republisher). Instead, Hernandez argues that the original statements were not defamatory and that Sorola is unable to show that she acted with actual malice in republishing the statements. *See In re Lipsky*, 460 S.W.3d at 593. We have already concluded that the gist of the statements, originally made by Guzman and Moreno and republished by

Hernandez, was defamatory per se. Whether Sorola has proven that Hernandez acted with actual malice in republishing the YouTube videos is therefore dispositive of this issue. *See Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005) (considering only the evidence of the element of actual malice where it was dispositive in a defamation analysis).

An actual malice determination "focuses not on what the defendant should have done or did not do." *Tex. Campaign for the Env't v. Partners Dewatering Int'l, LLC*, 485 S.W.3d 184, 201 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). Neither does the determination focus on what a defendant would have known had she researched the matter prior to republication. *Bentley*, 94 S.W.3d. at 596 ("A failure to investigate fully is not evidence of actual malice; a purposeful avoidance of the truth is."). Instead, the focus is on the defendant's state of mind at the time of the republication and whether there is clear and specific evidence that she either knew the statements were false or "entertained serious doubts as to the truth" of the statements made. *Id.* at 591; *see also Urban Eng'g v. Salinas Constr. Techs., Ltd.*, No. 13-16-00451-CV, 2017 WL 2289029, at *7 (Tex. App.—Corpus Christi–Edinburg May 25, 2017, pet. denied) (mem. op.).

Sorola's affidavit makes no mention of Hernandez. In his live pleading and responses to appellants' motions to dismiss, Sorola argued that Hernandez was motivated to "destroy Sorola for exposing the wedding scheme that brought [Hernandez's] daughter [co-defendant Garcia] down and caused [Garcia] the loss of her J.P. office,"[18]

---

[18] In an unrelated suit against Garcia, Sorola claimed that Garcia had charged his clients $75 to waive the statutorily-required waiting period before issuing a marriage license. Sorola submitted a copy of an editorial published in the *San Antonio Express-News* and an article from Valleycentral.com dated October 24, 2013, both which alleged that Garcia had been sued for improperly charging money in exchange for marriage certificates.

and because he had supported Garcia's political opponent in a prior election. *See Skeen*, 159 S.W.3d at 639. Sorola additionally argued that the 2018 Letter of Reprimand and SCJC order are clear and specific evidence of actual malice, that it was incumbent on Hernandez to "investigate the truth of the [YouTube] statements before republishing," that such expectation was reasonable given "the [2018 Letter of Reprimand] would be easily obtained since it was already public on YouTube," and that "Hernandez is a very resourceful woman who will contact those in positions of power or their relatives to get what she wants and needs for self and her family." *See Bentley*, 94 S.W.3d. at 591 ("[T]he failure to investigate the facts before speaking as a reasonably prudent person would do is not, standing alone, evidence of a reckless disregard for the truth, but evidence that a failure to investigate was contrary to a speaker's usual practice and motivated by a desire to avoid the truth may demonstrate the reckless disregard required for actual malice.").

Though Sorola has certainly presented evidence of ill-will between himself and Hernandez, Sorola has presented no evidence that Hernandez had actual knowledge of the YouTube videos' falsity or entertained serious doubts as to the veracity of the statements. *See Huckabee*, 19 S.W.3d at 420 ("Actual malice in a defamation case . . . does not include ill-will, spite, or evil motive."); *see also In re Lipsky*, 460 S.W.3d at 592 (providing that conclusory affidavits with "[b]are, baseless opinions" are "insufficient to satisfy the TCPA's requirement of 'clear and specific evidence'"). Sorola cannot show that Hernandez "purposefully avoided discovering facts that might show the falsity of the allegations" where "no source could have easily proved or disproved the . . . allegations." *See Skeen*, 159 S.W.3d at 638.

34

The 2018 Letter of Reprimand and SCJC order do not, as Sorola claims, prove that he was "found innocent, exonerated, and cleared of [Guzman's and Moreno's] allegations." The language contained in the 2018 Letter of Reprimand, which references each of Guzman's allegations, provides little more absolution than already afforded to Sorola under our criminal justice system's presumption of innocence. *See Exoneration*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining exoneration, in the criminal law context, as the "clearing of someone's name after that person has been accused of blameworthy conduct or wrongdoing; vindication"); *Innocent*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining innocent as "[f]ree from guilt; free from legal fault"); *see generally Gray v. Skelton*, 595 S.W.3d 633, 638 (Tex. 2020) (observing that the definition of exoneration "contemplates an affirmative act" and concluding that "the mere fact that the State has decided to not bring criminal charges against" a party is not akin to an exoneration). Meanwhile, we have no evidence that the SCJC order was ever made public prior to this suit, *see* TEX. GOV'T CODE ANN. § 33.032, and the SCJC order does not specify the extent of the allegations raised by Guzman and reviewed by the SCJC before reaching its conclusion. Neither document makes any mention of Moreno or her allegations, which may or may not exist independently from Guzman's allegations. Therefore, we disagree with Sorola's assertion that an investigation into the 2018 Letter of Reprimand or SCJC order would have confirmed the falsity of Guzman's and Moreno's YouTube videos. *See id.*; *Bentley*, 94 S.W.3d at 596 ("[T]he actual malice standard requires that a defendant have, subjectively, significant doubt about the truth of his statements at the time they are made.").

35

It was misleading for Guzman and Moreno to set forth criminal allegations and thereafter imply an adverse investigation outcome through omission or misrepresentation of subsequent facts. However, the 2018 Letter of Reprimand is, in fact, titled "Letter of Reprimand," and we decline to impute Guzman's and Moreno's respective omissions or misrepresentations onto Hernandez absent evidence that Hernandez, a non-lawyer republisher, had reason to believe or had knowledge that Guzman's and Moreno's statements were false. [19] *See Time, Inc. v. Pape*, 401 U.S. 279, 291–92 (1971) (concluding that a defendant's failure to clarify that charges of police misconduct were merely allegations, though "an error of judgment," was not evidence of actual malice in defamation suit); *Turner*, 38 S.W.3d at 121–22 (concluding that it was "not apparent from the record whether [the defendant], as a non-lawyer, understood the significance" of the misleading statements, and there lacked "clear and convincing evidence [the defendant] himself believed the [publication] to be misleading"); *Rodriguez*, 566 S.W.3d at 858 (concluding the plaintiff had failed to establish a prima facie case of actual malice because there was "no evidence that [the defendant] actually knew that such statements explicitly or implicitly accusing [the plaintiff] of domestic violence were false, and the statements themselves are neither inherently improbable nor obviously dubious" despite the plaintiff presenting evidence that the defendant had an injurious motive because the co-defendant's relative and the plaintiff were opposing political candidates in a contentious race); *see also Weber v. Fernandez*, No. 02-18-00275-CV, 2019 WL 1395796, at *1 (Tex.

---

[19] Sorola's affidavit briefly states that he paid for advertisements in local newspapers "to respond" to the YouTube allegations. However, copies of the advertisements are not in the record, and there is no evidence of when the advertisements were published or what the advertisements precisely stated. Further, Sorola does not claim that Hernandez was aware of his publicized responses—presumably denying the YouTube allegations—before she republished the YouTube videos.

App.—Fort Worth Mar. 28, 2019, no pet.) (mem. op.) (concluding statements were not made with actual malice because though they were mischaracterized and the "mischaracterizations appear blatant to lawyers and judges who devote themselves to parsing the distinctions that Appellants misstated," "we do not analyze the statements through a lens so finely tuned to the intricacies of the law").

We conclude that Sorola has not established a prima facie case for every element of his defamation claim under the TCPA with respect to Hernandez. *See Hall*, 579 S.W.3d at 377, 382; *Tex. Campaign for the Env't*, 485 S.W.3d at 192; *see also Urban Eng'g*, 2017 WL 2289029, at *8. Therefore, the trial court erred in denying Hernandez's motion to dismiss Sorola's defamation claim under the TCPA, and we sustain appellants' first issue in part.

## VI.    CONCLUSION

We affirm the trial court's denial of Guzman's and Moreno's TCPA motion to dismiss Sorola's defamation claim. We reverse the trial court's denial of Hernandez's TCPA motion to dismiss Sorola's defamation claim, and we remand the case to the trial court for further proceedings as required by statute.

CLARISSA SILVA
Justice

Delivered and filed on the
27th day of January, 2022.